IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUSIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>FIVE PROPERTIES, LLC; and APMT, LLC,<br>doing business as TONTI MANAGEMENT,<br><br>    Defendants. | Civil Action No. 25-cv-1213<br><br>JUDGE<br><br>MAGISTRATE<br><br>Jury Trial Demanded |

## COMPLAINT

The United States of America ("United States") alleges as follows:

**I.   INTRODUCTION**

1. The United States brings this action to enforce the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619 ("FHA").  The United States brings this action under 42 U.S.C. § 3612(o) on behalf of Dory Turnipseed, an individual with disabilities.

2. As set forth below, Ms. Turnipseed, who suffers from severe depression and anxiety, made a request for a reasonable accommodation to live with her assistance animal at the apartment complex owned and/or managed by Defendants.  Defendants denied Ms. Turnipseed's request and ultimately evicted her from her unit.  The United States alleges that Defendants discriminated against a person with disabilities, refused to make a reasonable accommodation necessary to provide an equal opportunity to use and enjoy a dwelling, and retaliated for the exercise of rights protected by the FHA, in violation of 42 U.S.C. §§ 3604(f)(1)-(3) and 3617.

1

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3612(o).

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the United States' claims occurred in this District, the property at issue is located in this District, and the Defendants are located in and conduct business in this District.

## III. THE SUBJECT PROPERTY AND DEFENDANTS

5. Sunlake Apartments ("Sunlake") is a multi-family apartment complex located at 800 Joe Yenni Boulevard, Kenner, Louisiana, 70065.

6. The apartments at Sunlake—including the unit in which Ms. Turnipseed resided—are "dwelling[s]" within the meaning of the FHA, 42 U.S.C. § 3602(b).

7. At all relevant times, Defendant Five Properties, LLC ("Five Properties") owned Sunlake. Five Properties is a limited liability company registered in Louisiana with active status, with a domicile and mailing address of 4433 Conlin Street, Metairie, Louisiana, 70006.

8. At all relevant times, Defendant APMT, LLC, doing business as Tonti Management ("Tonti Management"), managed Sunlake. APMT, LLC is a limited liability company registered in Louisiana with active status, with the same domicile and mailing address as Five Properties. Tonti Management is a registered trade name in Louisiana. At all relevant times, Tonti Management was responsible for Sunlake's operation and management. At all relevant times, Kimberly Mamerto and Sherri Roane were employees of Tonti Management and participated in the management of Sunlake as part of their job responsibilities. At all relevant times, Defendants Mamerto and Roane acted as agents of Five Properties and Tonti Management. Five Properties and Tonti Management

are vicariously liable for the conduct of Mamerto and Roane, who were acting within the scope of their employment and authority in the actions set forth below.

9. At all relevant times, Tonti Management acted as an agent of Five Properties. Because the actions set forth below occurred within the scope of this agency relationship, Five Properties is vicariously liable for the conduct of Tonti Management.

## IV. FACTUAL ALLEGATIONS

### A. Dory Turnipseed and Her Need for an Assistance Animal

10. Ms. Turnipseed has mental disabilities, including generalized anxiety disorder ("GAD") and attention-deficit/hyperactivity disorder ("ADHD"). These conditions substantially limit Ms. Turnipseed in major life activities, including her ability to sleep and concentrate.

11. Ms. Turnipseed received outpatient treatment for these conditions from April 2015 to at least March 2018.

12. Ms. Turnipseed is a person with a disability[1] within the meaning of 42 U.S.C. § 3602(h).

13. Ms. Turnipseed's mental disabilities significantly affect her ability to live in her home on equal terms as individuals without disabilities, and her dog assists with her disabilities.

14. From June 3 to June 8, 2018, Ms. Turnipseed received in-patient treatment for depression and anxiety.

15. According to a June 8, 2018, letter from the psychiatrist who treated her: "Ms. Turnipseed was in the hospital for acute depression and anxiety, which she struggles with on a chronic basis. She has an emotional support dog which is essential to her emotional health and daily functioning."

16. Ms. Turnipseed's assistance dog has not caused injury to the health or safety of others,

---

[1] Throughout this Complaint, the United States uses the term "disability" instead of "handicap." *See Helen L. v. DiDario*, 46 F.3d 325, 330 n.8 (3d Cir. 1995) ("The change in nomenclature from 'handicap' to 'disability' reflects Congress' awareness that individuals with disabilities find the term 'handicapped' objectionable."). The two terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

3

nor substantial physical damage to the property of others.

> B. *Ms. Turnipseed's Tenancy at Sunlake and Submission of Documents Concerning Her Disability and Need for an Assistance Animal*

17. On or around March 30, 2018, Ms. Turnipseed applied for a unit at Sunlake Apartments.

18. On or around April 13, 2018, Ms. Turnipseed signed a lease and related documents for apartment number 854-23, with a term of April 13 to October 31, 2018.

19. Ms. Turnipseed signed an Animal Disclosure and Animal Lease Addendum stating that "an animal is permitted at Lessor's sole discretion and only after mutual written agreement"; identifying a non-refundable animal fee and additional security deposit; and providing that if the tenant "house[s] an animal and fail[s] to obtain prior written permission," the tenant will pay twice "the applicable non-refundable animal fee and an additional security deposit . . . ."

20. Ms. Turnipseed was also provided with a document that stated, in part: "You have the duty to notify Lessor in writing if you now have an animal, acquire an animal in the future, or have an animal on the property at any time . . . ."

21. Ms. Turnipseed also signed a document stating that "[a]nimals must not exceed 25 lbs. at maturity."

22. On April 13, 2018, Ms. Turnipseed moved into her unit at Sunlake.

23. Ms. Turnipseed moved into Sunlake without her dog, Sasha, who she had adopted in 2013 and weighed about 35 pounds. She entrusted her dog to her parents when she moved into Sunlake.

24. As such, on the documents she submitted to Tonti Management, Ms. Turnipseed indicated she had no animals.

25. On April 3, 2018, prior to moving into Sunlake, Ms. Turnipseed asked her physician via the electronic patient portal if he had ever written a letter in support of the need for an emotional support animal.

4

26. On April 13, 2018, her physician responded: "Unfortunately, I do not write letters for emotional support animals. I am very sorry."

27. Shortly after moving in, Ms. Turnipseed's physical and mental health began to worsen rapidly. Her anxiety became so severe that she was unable to sleep. Ms. Turnipseed realized that she was able to better manage her symptoms when she was with her dog and determined that intermittent visits with her dog at her parents' house were not sufficient to manage her symptoms.

28. Because her physician had a practice of not writing letters for emotional support animals, Ms. Turnipseed sought assistance through an online service, which referred her to a clinical social worker licensed in Florida.

29. On May 6, 2018, the licensed social worker interviewed Ms. Turnipseed by phone.

30. The licensed social worker subsequently provided a letter to Ms. Turnipseed, which was dated May 5, 2018. The letter stated, in part: "I have assessed Ms. Dory Turnipseed on 04/23/2018 [though the interview in fact took place on May 6, 2018] and I am familiar with her history and the limitations imposed by her disorder. Ms. Turnipseed has been dealing with symptoms of an emotional disorder found in DSM-V for the past three years. . . . She benefits from having her emotional support animal in her residence. Her disorder affects her daily life and particularly her sleep and [sic] helps her to manage her anxiety and ADHD symptoms.[] Having her esa [emotional support animal] provides her with a feeling of safety and security."

31. On May 9, 2018, Ms. Turnipseed requested through Tonti Management's website that her dog be permitted to live with her as her assistance animal.

32. The same day, Tonti Management employee Roane asked Ms. Turnipseed for supporting documentation.

33. The same day, Ms. Turnipseed submitted to Ms. Roane: the social worker's letter; her dog's

5

training and vaccination records (showing a weight of 34.8 pounds); and approximately nine pages of summaries of psychiatric treatment appointments from 2015 to 2018, reflecting ADHD and GAD diagnoses.

34. The next day, on May 10, 2018, Ms. Turnipseed emailed Tonti Management employee Roane asking for an update, adding: "I apologize for my impatience, I have been struggling to cope."

35. Shortly after, Ms. Roane and another person—who indicated she was with Tonti Management's legal team—called Ms. Turnipseed, questioning the validity of the social worker's letter. Ms. Roane stated that someone would contact Ms. Turnipseed with additional paperwork for her and the social worker to complete.

36. On May 12, 2018, Ms. Turnipseed had a major anxiety attack and feared becoming a danger to herself. She retrieved her dog from her parents' house and brought her dog to her apartment.

37. Two days later, on May 14, 2018, Ms. Turnipseed emailed Tonti Management employee Roane, stating in part: "I spoke with my therapist over the weekend because the anxiety of waiting and anticipation was becoming unbearable to the point where I feared becoming a danger to myself." She also indicated that, although she tried waiting until the process was finished, she picked up her dog because of her severe anxiety.

38. That same day, Ms. Turnipseed received a document dated May 14, 2018, with Tonti Management's logo and signed by Tonti Management employee Mamerto (as "Agent for Lessor"). It stated that "[w]e are aware of and have photographed an animal in your apartment that is not approved[,]" and levied a fee of $600 and a security deposit of $450—for a total of $1,050. The document stated that: "If your animal is not approved, *or* if you fail to make payment within 24 hours, the charges . . . will apply, regardless of whether you remove the animal, and Lessor will

ask for return of premises."

39. Later that same day, Ms. Turnipseed emailed Ms. Roane, asking her to speak with Ms. Mamerto. She said that she hoped for an "amicable resolution" but was "fully prepared to retain legal counsel and file a formal complaint with HUD" (i.e., the U.S. Department of Housing and Urban Development).

40. On May 15, 2018, an attorney representing Tonti Management sent a letter to Ms. Turnipseed denying her request for her dog to live with her. The letter stated, in part:

> [O]n May 9, 2018, you submitted information indicating that . . . a social worker who remotely assessed you via the Internet and telephone . . . prescribed an Emotional Support Animal on May 5, 2018 . . . . You have never been seen by the remote social worker . . . and only spoke to him briefly by telephone. . . . .
>
> Based upon the information presented, my client must deny your request because the information fails to satisfy essential elements of the FHA. Moreover . . . the social worker's letter appears to have been purchased off of the Internet. You stated your own healthcare provider . . . declined to write a prescription for an ESA, presumably because he thought it would be of no therapeutic benefit, or you did not meet the criteria.
>
> In the meantime, my client is aware that you have brought the animal into your apartment even though it violates the Lease and you agreed not to do so in two separate telephone conversations.

41. The May 15, 2018, letter again demanded payment of $1,050 within 48 hours, threatening eviction. The letter concluded: "If you have any additional information . . . please send it to me no later than the close of business tomorrow so we may continue this collaborative process."

42. Later the same day, Ms. Turnipseed responded to Tonti Management's counsel via email, stating: "My letter was not purchased off the internet. I advised that I found his contact information through the internet. He is more than happy to speak with you. And I have a legitimate diagnosis. My psychiatrist only stated that he did not prescribe ESAs."

43. In a subsequent email the same day, Ms. Turnipseed stated that she was bringing her dog

7

back to her parents' house because she could not afford the fines and she was speaking with a lawyer.

44. On May 16, 2018, Tonti Management's counsel responded to Ms. Turnipseed by email, stating that the company would be "happy" to consider additional information and that "it does not appear" the social worker who wrote the letter "is [her] therapist." Counsel added that Ms. Turnipseed was still responsible for the $1,050 payment for having an unauthorized animal, but if Tonti Management approved the animal "as an ESA, any charges would be refunded to [her]."

45. The same day, Ms. Turnipseed's counsel—whom she retained around the same time— emailed Tonti Management's counsel, stating that she had been retained to address Tonti Management's denial of Ms. Turnipseed's emotional support animal request. Counsel reiterated that Ms. Turnipseed had explained her disability and provided documentation that her dog would help manage her disability, and Tonti Management had provided no guidance as to what additional information was necessary. Counsel added that Ms. Turnipseed would not pay the $1,050 fee and, unless Tonti Management would waive its policy that prevented Ms. Turnipseed from living with her dog, Ms. Turnipseed would initiate a disability-discrimination complaint.

46. Two days later, on May 18, 2018, Tonti Management employee Roane emailed Ms. Turnipseed asking her to submit any other documents or information related to her request for her dog to live with her by May 21, 2018 at noon.

47. Ms. Turnipseed responded to Ms. Roane on the same day, asking that she direct all future correspondence to Ms. Turnipseed's counsel.

48. Later that same day, Ms. Roane emailed Ms. Turnipseed, offering to terminate her "lease with a 48 hour notice" and stating that all notice and cancellation fees would be waived.

49. On May 23, 2018, Ms. Turnipseed filed a complaint against Tonti Management in the U.S.

District Court for the Eastern District of Louisiana ("federal lawsuit"), alleging failure to grant a reasonable accommodation, intimidation, and disability discrimination, in violation of the FHA.

50. On or around May 23, 2018, Defendants Tonti Management and Five Properties filed an eviction petition in state court against Ms. Turnipseed, which stated that she had "breached the Lease and is in default by permitting an unauthorized dog to visit and/or live in her apartment, and for failing to pay amounts due under the Lease for said Lease violations."

51. Ms. Turnipseed's mental health further declined due to stress related to her interactions with Defendants, the threat of eviction, and her inability to have her dog with her.

C. *Ms. Turnipseed's Hospitalization and Continued Efforts to Obtain a Reasonable Accommodation*

52. On June 3, 2018, Ms. Turnipseed experienced a major anxiety attack and sought treatment at an emergency room. The attending physician issued a certificate that led to her being admitted to an in-patient facility for suicidal ideation.

53. Her treating psychiatrist at the facility wrote and signed a letter dated June 8, 2018, identified above in paragraph 16, explaining her hospitalization, diagnoses, and need for an assistance animal.

54. Upon returning to Sunlake after discharge on June 8, 2018, Ms. Turnipseed found a show-cause eviction notice on her door.

55. On June 11, 2018, Ms. Turnipseed's counsel emailed Tonti Management's counsel, attaching the June 8 letter and related records from the facility, and stating that Ms. Turnipseed went to the facility "because of her deteriorated mental state." The email asked Tonti Management to review the documents and to respond if the company "will reconsider its refusal to waive the weight restriction so that Ms. Turnipseed may have the therapeutic benefit of residing with her dog Sasha for emotional support."

56. After email exchanges between Ms. Turnipseed's counsel and Tonti Management's counsel about whether the latter was permitted to contact Ms. Turnipseed's healthcare providers and Tonti Management's request that Ms. Turnipseed sign a release, on June 14, 2018, Ms. Turnipseed's counsel provided an enumerated list of the information and records already produced to Tonti Management as verification of Ms. Turnipseed's disability and need for an assistance animal: (1) Ms. Turnipseed's own statement, (2) medical records from three years showing that she was under the care of a psychiatrist and on medication to treat a health condition, (3) the social worker's letter verifying the need for an assistance animal and accompanying invitation to speak with the social worker, (4) records from her hospitalization reflecting diagnoses and medications, and (5) the treating psychiatrist's letter confirming the reasons for hospitalization and need for an assistance animal.

57. On June 15, 2018, Tonti Management's counsel responded by reiterating that Tonti Management had the right to "verify this new documentation provided in support of her request."

   D. *Defendants Evict Ms. Turnipseed*

58. On or around June 18, 2018, Ms. Turnipseed filed her complaint with HUD.

59. Also on June 18, 2018, the Louisiana state court held a hearing on Tonti Management and Five Properties' petition for eviction, giving Ms. Turnipseed until June 25 to vacate.

60. On June 25, 2018, Ms. Turnipseed vacated her unit at Sunlake.

61. On June 26, 2018, the Louisiana state court entered a judgment granting the petition for eviction. The judgment denied Tonti Management and Five Properties' claim for an award of amounts due under the lease.

62. Ms. Turnipseed received three notices from Tonti Management, dated July 11, July 30, and August 15, 2018, requesting payment of $11,236.50.

63. After the eviction, in the federal lawsuit, the court granted Tonti Management's motion to compel arbitration and motion to dismiss because Ms. Turnipseed did not initiate arbitration pursuant to the lease's arbitration addendum.

### V.   HUD COMPLAINT AND CHARGE OF DISCRIMINATION

64. Ms. Turnipseed timely filed a complaint of discrimination with HUD on or around June 18, 2018.

65. HUD provided notice of the complaint to the Defendants by certified mail on June 19, 2018, which was received on June 26, 2018.

66. In accordance with 42 U.S.C. § 3610(a) and (b), the Secretary of HUD (the "Secretary") investigated the complaint, attempted conciliation without success, and prepared a final investigative report. Based on the information gathered in the investigation, the Secretary determined that reasonable cause existed to believe that the Defendants violated the FHA.

67. Accordingly, on January 15, 2025, under 42 U.S.C. § 3610(g)(2)(A), the Secretary issued a Determination of Reasonable Cause and Charge of Discrimination against Defendants.

68. On January 28, 2025, the Defendants timely elected to have the claims asserted in the Charge of Discrimination resolved in a civil action under 42 U.S.C. § 3612(a).

69. The Secretary subsequently authorized the Attorney General to file this action on behalf of Ms. Turnipseed under 42 U.S.C. § 3612(o).

### CLAIM FOR RELIEF: FAIR HOUSING ACT

70. The United States incorporates the allegations as set forth above.

71. Defendants' actions as described above constitute:

   a. discrimination in the rental of, or otherwise making unavailable or denying, a dwelling because of disability, in violation of 42 U.S.C. § 3604(f)(1);

    b. discrimination in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2);

    c. a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B); and

    d. coercion, intimidation, threats, or interference with any person in the exercise or enjoyment of, or on account of their having exercised or enjoyed, any right granted or protected by Sections 3603 to 3606 of the FHA, in violation of 42 U.S.C. § 3617.

72. Defendants' actions and statements, as set forth above, were intentional, willful, and taken in reckless disregard of the rights of others.

73. Ms. Turnipseed has suffered damages as a result of Defendants' discriminatory conduct and is an "aggrieved person" under 42 U.S.C. § 3602(i).

74. The United States prays that the Court enter an order that:

    a. Declares that Defendants' actions, as alleged, violate the FHA;

    b. Orders the Defendants to take all affirmative steps to ensure their compliance with the FHA, including steps necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate to the extent practicable the effects of their unlawful housing practices as described herein;

    c. Orders the Defendants to take all affirmative steps to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the Defendants' discriminatory conduct;

    d. Awards monetary damages to Ms. Turnipseed as authorized by 42 U.S.C. §§ 3612(o) and

3613(c)(1); and

e.  Awards such additional relief as the interests of justice may require.

## DEMAND FOR JURY TRIAL

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 13, 2025

Respectfully submitted,

|  |  |
|---|---|
|  | PAMELA BONDI<br>Attorney General |
| MICHAEL M. SIMPSON<br>Acting United States Attorney<br>Eastern District of Louisiana | HARMEET K. DHILLON<br>Assistant Attorney General<br>Civil Rights Division |
|  | MICHAEL E. GATES<br>Deputy Assistant Attorney General<br>Civil Rights Division |
|  | CARRIE PAGNUCCO<br>Chief<br>Housing and Civil Enforcement Section |
| */s/ Glenn K. Schreiber*<br>GLENN K. SCHREIBER<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>650 Poydras Street, Suite 1600<br>New Orleans, LA 70130<br>Phone:  (504) 680-3093<br>Fax: (504) 680-3174<br>Email: Glenn.Schreiber@usdoj.gov | *s/ Harin C. Song*<br>TAMICA H. DANIEL<br>Deputy Chief<br>HARIN C. SONG<br>(CA Bar No. 302601)<br>SARA I. MARGOLIS<br>(DC Bar No. 90018020)<br>Trial Attorneys<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>150 M Street, NE<br>Washington, DC 20002<br>Phone: (202) 598-9882<br>Fax: (202) 514-1116<br>Email: Harin.C.Song2@usdoj.gov<br>Email: Sara.Margolis@usdoj.gov |

Attorneys for Plaintiff United States of America