UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CIVIL ACTION NO. 2:25-CV-001213 |
|---|---|---|
| | * | |
| | * | SECTION J |
| VERSUS | * | |
| | * | JUDGE CARL J. BARBIER |
| | * | |
| FIVE PROPERTIES, LLC AND | * | DIVISION 4 |
| APMT, LLC | * | |
| | * | MAGISTRATE JUDGE |
| | * | KAREN WELLS ROBY |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Five Properties, LLC and APMT, LLC d/b/a/ Tonti Management (collectively, "Respondents" or "Defendants") submit this memorandum in support of their motion for summary judgment.

**I. SUMMARY OF THE ARGUMENT**

In 2018, Dory Turnipseed filed a lawsuit alleging that Defendants violated the Fair Housing Act ("FHA"). She also filed a HUD complaint. Her lawsuit was then assigned to Section J of this Court, and ultimately, this Court dismissed Turnipseed's claims with prejudice.

In the years that followed, HUD unconcernedly investigated Turnipseed's HUD complaint. Although the FHA requires HUD to complete its investigation within 100 days after Turnipseed filed her complaint unless it is impracticable to do so, HUD took 2403 days. And although the FHA requires HUD to notify the parties in writing if it will be unable to complete its investigation within 100 days and why, HUD failed to do that for 1953 days.

Now, seven years after Turnipseed filed her HUD complaint, the Government filed this lawsuit on her behalf, asserting the same claims that this Court previously dismissed with prejudice. The Court should again dismiss the claims because they are barred by the doctrines of res judicata and laches.

## II. FACTUAL BACKGROUND

### A. Turnipseed's Dog, Her Tenancy at Sunlake, and Her Request for an Accommodation.

In 2013, Turnipseed adopted her dog, Sasha.[1] Prior to living at Sunlake Apartments, she lived with her parents and in other apartments with her dog.[2]

On March 30, 2018, Turnipseed applied to live at Sunlake.[3] At that time, although she lived with her dog and disclosed to a Tonti Management employee that she had a dog,[4] she indicated in her application that she did not have an animal and that she did not plan on moving into her unit with an animal.[5] And she did not claim that her dog was an emotional support animal ("ESA"). Then, before she moved into Sunlake, on April 3, 2018, Turnipseed asked her physician for an ESA letter.[6] On April 13, 2018, her physician informed her that he "do[es] not write letters for emotional support animals."[7] The same day, Turnipseed executed a lease with Tonti Management and Five Properties and moved into Sunlake.[8] And again, she indicated that she did not own an animal.[9]

---

1. Doc. 4 at 4, ¶ 23.
2. See Ex. 1, HUD Final Investigative Report at 12.
3. Doc. 4 at 4, ¶ 17.
4. See Ex. 3, Turnipseed Email. The Tonti Management employee that Turnipseed initially spoke to regarding her application and her dog was Joan DelGiorno. Ex. 2, Tonti Decl. Delgiorno is no longer a Tonti Management employee. Id. After her departure, she moved to another state, and underwent treatment for throat cancer, which involved removing her voice box. Id. Tonti Management has not had contact with Delgiorno for many years. Id.
5. Doc. 4 at 4, ¶ 24; Ex. 2A, Application; Ex. 2B, Guest Card.
6. Doc. 4 at 4, ¶ 25.
7. Id. at 5, ¶ 26.
8. Id. at 4, ¶¶ 18, 22; Ex. 2C, Lease.
9. Doc. 4 at 4, ¶¶ 23-24; Ex. 2C, Lease.

2

Because her physician refused to write her an ESA letter, she sought one from the internet.[10] Specifically, on May 5, 2018, Turnipseed visited USAservicedogs.org, which matched her with Jeffrey Friedman, a Florida licensed clinical social worker.[11] On May 6, 2018, Friedman conducted a phone consultation and wrote Turnipseed an ESA letter.[12] Friedman backdated the letter to May 5, 2018, and incorrectly represented that he assessed Turnipseed on April 23, 2018.[13] When later questioned regarding his misrepresentation, Friedman stated that he "thought [it] was more likely for her to get the accommodation approved if it was dated this way."[14]

On May 9, 2018, Turnipseed requested that her dog be permitted to live with her and claimed for the first time that her dog was an ESA.[15] Prior to obtaining approval, Turnipseed brought her dog to live with her in her apartment.[16] On May 14, 2018, she informed a Tonti Management employee that she had brought the dog onto the property.[17] Tonti Management had also separately learned this information,[18] and earlier the same day, it had sent Turnipseed a notice of her animal violation.[19] The notice stated that she was to pay a fee for the lease violation and an additional security deposit or face eviction.[20]

---

10. Doc. 4 at 5, ¶ 28.
11. *See* Ex. 1, HUD Final Investigative Report at 60, 64, 66.
12. Doc. 4 at 5, ¶¶ 29-30; *see* Ex. 1, HUD Final Investigative Report at 65-66.
13. Doc. 4 at 5, ¶ 30; *see* Ex. 1, HUD Final Investigative Report at 60-61.
14. Ex. 1, HUD Final Investigative Report at 60.
15. Doc. 4 at 5, ¶ 31.
16. *Id.* at 6, ¶ 36.
17. *Id.* at ¶ 37.
18. Turnipseed's dog was discovered to be in her apartment by an exterminator during routine preventive maintenance in the morning on May 14, 2018. Ex. 2, Tonti Decl. The exterminator reported the dog to Tonti Management. *Id.* The notice of her animal violation was then left on Turnipseed's door. *Id.* Therefore, only after Turnipseed returned home from work to find the violation did she disclose to Tonti Management that she brought her dog to live with her in her apartment.
19. *See* Doc. 4 at 6, ¶ 38.
20. *Id.* at 6-7, ¶ 38.

**B.     The Eviction and Fair Housing Lawsuits.**

On May 23, 2018, Turnipseed sued Tonti Management alleging that it violated the FHA.[21] The lawsuit was then assigned to Section J of this Court.[22] The same day, Five Properties and Tonti Management filed a petition for eviction in the 24th Judicial District Court for the Parish of Jefferson.[23] Turnipseed then moved for a temporary restraining order and preliminary injunction seeking to enjoin her eviction,[24] which this Court denied on June 13, 2018.[25]

On June 18, 2018, Judge Henry Sullivan of the 24th Judicial District Court held a hearing, granted the petition for eviction, and ordered Turnipseed to vacate Sunlake.[26]

Thereafter, on July 5, 2018, Tonti Management moved to compel arbitration in the federal lawsuit.[27] On November 14, 2018, this Court granted the motion, compelled arbitration, and stayed the lawsuit pending the completion of arbitration.[28] After Turnipseed failed to submit her claims to arbitration for nearly four years, Tonti Management moved to dismiss the lawsuit for lack of prosecution on August 15, 2022.[29] This Court denied the motion, gave Turnipseed another thirty days to initiate arbitration, and warned that it would grant a motion filed after that deadline.[30] After Turnipseed again failed to submit her claims to arbitration, Tonti Management filed another motion to dismiss,[31] which the Court then granted, dismissing her claims with prejudice.[32]

---

21. Complaint & Demand for Jury Trial, *Turnipseed v. APMT, LLC*, No. 18-5187 (E.D. La. May 23, 2018), Dkt. No. 1.
22. Initial Case Assignment, *Turnipseed*, No. 18-5187, Dkt. No. 3.
23. Petition for Eviction, *Tonti Mgmt., LLC v. Turnipseed*, No. 784-085 (24th Jud. Dist. Ct. May 23, 2018).
24. Plaintiff's Emergency Motion for Temporary Restraining Order & Preliminary Injunction, *Turnipseed*, No. 18-5187, Dkt. No. 11.
25. Order, *Turnipseed*, No. 18-5187, Dkt. No. 23.
26. Judgment, *Tonti Mgmt., LLC*, No. 784-085.
27. Defendant's Motion to Compel Arbitration & Stay, *Turnipseed*, No. 18-5187, Dkt. No. 26.
28. *Turnipseed v. APMT, LLC*, No. 18-5187, 2018 WL 5977889, at *3 (E.D. La. Nov. 14, 2018).
29. Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 41(b) for Failure to Prosecute, *Turnipseed*, No. 18-5187, Dkt. No. 35.
30. *Turnipseed v. APMT, LLC*, No. 18-5187, 2022 WL 7540213, at *3 (E.D. La. Oct. 13, 2022).
31. *Ex Parte* Motion to Dismiss Pursuant to Fed. R. Civ. P. 41(b) for Failure to Prosecute, *Turnipseed*, No. 18-5187, Dkt. No. 42.
32. Order, *Turnipseed*, No. 18-5187, Dkt. No. 44.

## C. Turnipseed's HUD Complaint and HUD's Investigation.

On June 18, 2018 (the same day that Turnipseed was evicted), Turnipseed filed a HUD complaint.[33] The following day, HUD sent Respondents notice of Turnipseed's HUD complaint.[34] In HUD's acceptance letter, it acknowledged that the FHA requires it to complete its investigation in 100 days and that, if it is unable to complete its investigation within 100 days, the FHA requires it to notify the parties in writing the reasons for not doing so.[35] On July 12, 2018, Respondents answered the complaint.[36] Then, HUD failed to complete its investigation and make a determination within 100 days, and it failed to timely notify any party of the reason for the delay.

Indeed, it appears that HUD did nothing further until April 15, 2019 (301 days after the complaint was filed), when it reached out to Respondents' counsel to obtain their response to the complaint (which had already been provided).[37] The following day, Respondents' counsel quickly re-provided their answer.[38] Then, a month later (338 days after the complaint was filed), on May 22, 2019, HUD interviewed Turnipseed.[39] Four months later, on September 17, 2019, HUD obtained five pleadings from PACER.[40]

HUD then waited nearly another year without doing anything further until August 28, 2020 (802 days after the complaint was filed), when it exchanged a few emails with Turnipseed's and

---

33. Doc. 4 at 11, ¶ 64. It is unclear when Turnipseed actually filed her HUD complaint. HUD contends that the complaint was filed on June 18, 2018. *See id.*; Ex. 1, HUD Final Investigative Report at 1. But the complaint may have been filed earlier. The complaint the Respondents received is dated June 15, 2018, and Turnipseed signed and dated the complaint June 14, 2018. *See* Ex. 2E, HUD Complaint. In her prior lawsuit, Turnipseed represented that she filed her complaint on May 30, 2018. *See* Opposition to Motion to Dismiss at 2, 5-7, *Turnipseed*, No. 18-5187, Dkt. No. 36. For purposes of this motion, Defendants are using June 18, 2018, as the date the complaint was filed.
34. Doc. 4 at 11, ¶ 65; Ex. 2D, Acceptance Letter.
35. Ex. 2D, Acceptance Letter at 2.
36. Ex. 2F, Response.
37. Ex. 1, HUD Final Investigative Report at 43.
38. *Id.*
39. *Id.* at 4.
40. *See id.* at 52-55.

Respondents' counsel.[41] Over eight months later, HUD sent data requests to Respondents, and Respondents answered the requests on May 10 and 18, 2021.[42]

HUD then did nothing again for over a year. On July 5, 2022 (1478 days after the complaint was filed), HUD interviewed Turnipseed again.[43] And during the following week, HUD interviewed Dr. Peter "Mike" Mahony, a psychiatrist who previously treated Turnipseed, and Friedman.[44] Five months later, on December 22, 2022, HUD interviewed two Tonti Management employees and Respondents' counsel.[45] A few weeks later, on January 11, 2023, HUD emailed Turnipseed.[46] In her response, Turnipseed noted that she already provided information regarding the event from four years ago.[47] Nearly two weeks later, on January 23, 2023, HUD interviewed Margarethe Turnipseed, Turnipseed's mother.[48]

On February 2, 2023, HUD then sent Respondents another data request, largely requesting documents that Respondents had already provided to HUD.[49] Respondents re-submitted documents to HUD in response on February 9, 2023.[50] Thereafter, Respondents provided HUD with the order dismissing Turnipseed's claims with prejudice, questioned why the investigation was ongoing, and requested that HUD close the investigation as the claims are barred by res judicata.[51] But HUD proceeded with the investigation, and on March 13, 2023, HUD sent Respondents a pre-subpoena letter to which they responded on March 23, 2023.[52] Two months

---

41. *See id.* at 7, 51-52.
42. *See id.* at 47-48.
43. *Id.* at 6.
44. *Id.*
45. *Id.* at 15-17.
46. *Id.* at 10-11, 25-27.
47. *Id.* at 11.
48. *Id.* at 12.
49. *Id.* at 43, 55.
50. *Id.* at 43.
51. *Id.* at 50-51.
52. *Id.* at 45, 55.

later, on May 19, 2023, HUD emailed Turnipseed again.[53] And then three months later, HUD obtained four pleadings from PACER (which had already been provided to it).[54]

Then, on October 31, 2023 (1953 days after the complaint was filed), HUD sent a notice to Respondents explaining—for the first time—that it was unable to complete its investigation within 100 days from the filing of the complaint.[55] HUD claimed that "[c]ompletion within 100 days was impracticable because there was a need to conduct further legal analysis of information gathered during the investigation and to finish writing a report of the investigation."[56] HUD did not explain why it had not started its investigation until 301 days after the complaint was filed or why it let months and years pass between activity on the investigation.[57] And HUD did not explain why it had waited 1953 days to notify Respondents that completion of the investigation was impracticable.[58] HUD projected that it would complete its investigation by November 30, 2023.[59] Unsurprisingly, it did not.

Instead, HUD continued to take its time. On November 22, 2023, HUD emailed Respondents' counsel regarding their policies.[60] Then, HUD waited over four months and emailed Turnipseed again.[61] This time, in response to one of HUD's questions, Turnipseed responded "I don't remember. That should all be in the paperwork I submitted 6 years ago."[62] Three weeks later, on May 1, 2024, HUD sent interrogatories and document requests to Friedman,[63] and three months later, on August 15, 2024, HUD sent additional interrogatories and document requests to

---

53. *Id.* at 11, 28-29.
54. *See id.* at 56-57.
55. Ex. 2G, 100-Day Letter.
56. *Id.*
57. *See id.*
58. *See id.*
59. *Id.*
60. Ex. 1, HUD Final Investigative Report at 52.
61. *Id.* at 13-14.
62. *Id.* at 13.
63. *Id.* at 61-64.

Friedman.⁶⁴ Both times, Friedman responded shortly thereafter. Then, two months later, HUD emailed Friedman regarding his letter being backdated.⁶⁵

Finally, three months later, on January 15, 2025 (2403 days after the complaint was filed), HUD completed its investigation and issued a charge of discrimination and determination of reasonable cause.⁶⁶

**D.    This Lawsuit**

After receiving the charge of discrimination, Respondents elected to have Turnipseed's claims asserted in the charge decided in a civil action,⁶⁷ and the Government filed this suit, asserting claims on behalf of Turnipseed. The claims asserted in this lawsuit are the same claims that this Court previously dismissed with prejudice.

**III.    LAW AND ARGUMENT**

Federal Rule of Civil Procedure 56 provides a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."⁶⁸ To determine whether a dispute as to any material fact exists, courts consider "all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."⁶⁹ Courts must draw all reasonable inferences in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions.⁷⁰ A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party."⁷¹

---

64.   *Id.* at 64-69.
65.   *Id.* at 60-61.
66.   Doc. 4 at 11, ¶ 67.
67.   *Id.* ¶ 68.
68.   Fed. R. Civ. P. 56(a).
69.   *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).
70.   *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)
71.   *Delta & Pine Land Co.*, 530 F.3d at 399.

If the moving party will bear the burden of proving the dispositive issue at trial, the moving party must come forward with evidence that would entitle it to a directed verdict if such evidence went uncontroverted at trial.[72] The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact" or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[73]

If the nonmoving party will bear the burden of proving the dispositive issue at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[74] After the moving party satisfies this burden, the nonmoving party must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[75] The nonmoving party may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial.[76] Further, the nonmoving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[77]

### A. The Court Should Dismiss Turnipseed's Claims Because They Are Barred by Res Judicata.

Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit.[78] For res judicata to apply, (1) the parties must be identical or in privity, (2) the judgment in the prior action must be rendered by a court of competent

---

72. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).
73. *Id.* at 1265.
74. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).
75. *Id.* at 324.
76. *Id.*
77. *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
78. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

jurisdiction, (3) the prior action must have been concluded by a final judgment on the merits, and (4) the same claim or cause of action must be involved in both actions.[79]

1. **Turnipseed and the Government Are in Privity Because the Government's Interests Were Adequately Represented by Turnipseed in the Prior Suit.**

The Fifth Circuit does not require strict identity of parties.[80] Privity represents a legal conclusion that the relationship between a party to a prior suit and a nonparty is sufficiently close to justify application of the principle of preclusion.[81] For res judicata purposes, the Fifth Circuit holds that privity exists in just three circumstances: (1) where the nonparty is the successor in interest to a party's interest in the property; (2) where the nonparty controlled the prior litigation; and (3) where the nonparty's interests were adequately represented by a party to the original suit.[82]

The Fifth Circuit has held that "a judgment in an action in which a government agency represents private individuals is binding on those individuals."[83] Equally, the Ninth Circuit has held that "when a government entity sues for the same relief that a "plaintiff [has] already *pursued* then the requisite closeness of interests for privity is present."[84] The Fifth Circuit has applied this principle in lawsuits filed by the EEOC on behalf of individuals. After an employee's claims are dismissed with prejudice, res judicata bars a subsequent lawsuit filed by the EEOC on behalf of the employee when the lawsuit is predicated on the same claims previously asserted and adjudicated.[85]

---

79. *Id.*
80. *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992).
81. *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977).
82. *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990).
83. *Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 706 (5th Cir. 2005).
84. *California v. IntelliGender, LLC*, 771 F.3d 1169, 1179 (9th Cir. 2014) (alteration in original) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 962 (9th Cir. 2006)).
85. *See, e.g.*, *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 699 (5th Cir. 2007) (finding that "the EEOC's claims arise out of the same subject matter as the state court case" and were therefore barred by the doctrine of res judicata); *Truvillion v. King's Daughters Hosp.*, 614 F.2d 520, 525 (5th Cir. 1980) ("[T]he E.E.O.C. may not bring a second suit based on the transactions that were the subject of a prior suit by a private plaintiff . . . ."); *EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453, 456 (5th Cir. 1975) ("Although the termination of the aggrieved person's suit does not cut off the EEOC's right to bring suit to end practices discovered through the investigation of the charge filed by

The Government has only asserted claims on behalf of Turnipseed. Nothing more. Stated differently, the Government's interests are only Turnipseed's interests. Therefore, its interests were adequately represented by Turnipseed in the original suit. Because the Government seeks the same relief that Turnipseed already pursued, the Court should find that the requisite closeness of interests for privity is present.

## 2. The Prior Judgment Was Rendered by a Court of Competent Jurisdiction.

Courts have the authority to determine their own jurisdiction over the parties and subject matter.[86] For res judicata purposes, courts should not question the competent jurisdiction of the original court, absent an allegation of fraud in obtaining the prior judgment.[87]

The prior judgment was rendered by this Court,[88] and no allegations of fraud in obtaining the prior judgment have been made. Therefore, the Court should find that the prior judgment was rendered by a court of competent jurisdiction.

## 3. The Prior Action Concluded with a Final Judgment.

The Fifth Circuit has long held that "a dismissal with prejudice is deemed an adjudication on the merits for the purposes of res judicata," even where "there [w]as not . . . an adjudication on the merits in the sense of a weighing of facts."[89]

---

that person, the EEOC would be barred from filing suit on that particular charge and on behalf of that person who had had his suit adjudicated."). Other circuits have held the same. *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1291 (7th Cir. 1993) (finding privity between the EEOC and individuals for whom it sought individual benefits); *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 496-97 (3d Cir.1990) (holding that "individuals who fully litigated their own claims under the ADEA are precluded by res judicata from obtaining individual relief in a subsequent EEOC action based on the same claims").

   86.  *Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1052 (5th Cir. 1987).
   87.  *Stoll*, 305 U.S. at 172.
   88.  Order, *supra* note 32.
   89.  *Anthony v. Marion Cnty. Gen. Hosp.*, 617 F.2d 1164, 1170 (5th Cir. 1980); *see also Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir.1985) ("[A] dismissal with prejudice gives the defendant the full relief to which he is legally entitled and is tantamount to a judgment on the merits."); *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach, Inc.*, 575 F.2d 530, 534 (5th Cir. 1978) ("[A] dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action.").

After Turnipseed filed the prior suit, the Court compelled arbitration.[90] Then, Turnipseed failed to submit her claims to arbitration for four years, and as a result, the Court dismissed her claims with prejudice.[91] Such dismissal is a final judgment.

### 4. The Prior Action and this Lawsuit Involve the Same Claims.

To determine whether the same claim or cause of action is involved, the Fifth Circuit applies a "transactional test."[92] Under this test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose.[93] The critical issue is not the relief requested or the theory asserted but whether the two actions are based on the same nucleus of operative facts.[94] Res judicata "bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication, not merely those that were adjudicated."[95] This is true even when the later suit argues a novel legal theory or requests different relief.[96]

Turnipseed's prior suit and this lawsuit are based on the same nucleus of operative facts. Both lawsuits allege that, after Turnipseed moved into Sunlake, she requested a reasonable accommodation.[97] And both lawsuits allege that Defendants violated the FHA by refusing to accommodate Turnipseed and by retaliating against Turnipseed for exercising her rights protected by the FHA, in violation of 42 U.S.C. §§ 3604 and 3617.[98] The Court should therefore find that the same claims and causes of action are involved.

---

90. *Turnipseed*, 2018 WL 5977889, at *3.
91. Order, *supra* note 32.
92. *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990).
93. *Test Masters*, 428 F.3d at 571.
94. *In re Howe*, 913 F.2d at 1144.
95. *Id.* (citation omitted).
96. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 522 (5th Cir. 2016).
97. *Compare* Doc. 4 at 4-5, ¶¶ 22, 31, *with* First Amended Complaint & Demand for Jury Trial at 3-4, ¶¶ 13, 17, *Turnipseed*, No. 18-5187, Dkt. No. 24.
98. *Compare* Doc. 4 at 11-12, ¶¶ 71-74, *with* First Amended Complaint, *supra* note 97, at 10-14.

**B.  The Court Should Dismiss This Lawsuit Because HUD Failed to Complete Its Investigation Within 100-Days of the Filing of Turnipseed's Complaint.**

After an aggrieved person files a complaint with HUD regarding an alleged discriminatory housing practice, HUD must conduct an investigation.[99] The FHA requires that HUD complete its investigation and determine based on the facts whether reasonable cause exists to believe that a discriminatory housing practice has occurred within 100 days after the filing of the complaint unless it is impracticable to do so.[100] The legislative history contemplates that only in exceptional cases should an investigation extend beyond the 100-day limit.[101] And in those exceptional cases, "the investigation must be completed as soon as possible thereafter."[102] Further, if HUD is unable to complete the investigation or make the determination within 100 days, the FHA requires that HUD notify the complainant and respondent in writing of the reasons for not doing so.[103]

Although courts have found that the 100-day investigation and notice requirements are not a jurisdictional bar nor a statute of limitations,[104] this action may be barred under the doctrine of laches.[105] That is, the Court has "an obligation to determine whether the defendants have suffered substantial prejudice, warranting dismissal or other equitable relief."[106] For laches to bar this lawsuit, HUD "must be guilty of unreasonable and inexcusable delay that has prejudiced the defendant[s]."[107] A district court enjoys considerable discretion in deciding whether to apply the doctrine of laches to claims pending before it.[108]

---

99. 42 U.S.C. § 3610(a)(1)(B)(iv).
100. *Id.* § 3610(a)(1)(B)(iv), (g).
101. H.R. Rep. No. 100-711, at 33 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 2173, 2194.
102. *Id.*
103. 42 U.S.C. § 3610(a)(1)(C), (g).
104. *See, e.g.*, *United States v. Coldwell Banker Bullard Realty Co., Inc.*, No. 08-3427, 2009 WL 10664941, at *4 (N.D. Ga. Nov. 16, 2009); *United States v. Sea Winds of Marco, Inc.*, 893 F. Supp. 1051, 1055 (M.D. Fla. 1995); *United States v. Gorman Towers Apartments*, 857 F. Supp. 1335, 1340 (W.D. Ark. 1994).
105. *United States v. Salvation Army*, No. 96-2415, 1997 WL 37951, at *2 (S.D.N.Y. Jan. 30, 1997); *United States v. Barberis*, 887 F. Supp. 110, 116 (D. Md. 1995).
106. *Salvation Army*, 1997 WL 37951, at *2.
107. *Id.*
108. *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 707 (5th Cir. 1994).

**1. HUD's 2403 Days-Long Investigation Was an Unreasonable and Inexcusable Delay.**

Turnipseed filed her complaint on June 18, 2018.[109] HUD clearly failed to complete its investigation and make a determination within 100 days. Indeed, it appears that it did not even begin its investigation in the first 100 days. Instead, HUD did nothing until 301 days after the complaint was filed, when it reached out to Respondents' counsel to obtain their response to the complaint (which had already been provided to HUD).[110] Then, a month later (338 days after the complaint was filed), HUD conducted its first interview.[111] HUD's investigation then went forward with months and sometimes a year gaps between activity.[112]

Then, on October 31, 2023 (1953 days after the complaint was filed), HUD sent a notice to Respondents explaining—for the first time—that it was unable to complete its investigation within 100 days from the filing of the complaint.[113] HUD did not explain why it had not started its investigation until 301 days after the complaint was filed or why its investigation was riddled with consistent delays. Nor did HUD explain why it had waited 1953 days to notify Respondents that completion of the investigation was impracticable. And although HUD projected that it would complete its investigation by November 30, 2023,[114] HUD took over another year to finish its investigation.

Finally, on January 15, 2025, HUD completed its investigation and issued a determination of reasonable cause and a charge of discrimination against Respondents.[115] So instead of completing its investigation in 100 days, HUD took 2403 days. And it failed to timely notify either party of the reason for the delay. This delay is plainly unreasonable and inexcusable.

---

109. Doc. 4 at 11.
110. Ex. 1, HUD Final Investigative Report at 43.
111. *Id.* at 4.
112. *See, e.g.*, *supra* text accompanying notes 40-43, 45, 53-54, 61, 64-66.
113. Ex. 2G, 100-Day Letter.
114. *Id.*
115. Doc. 4 at 11, ¶ 67.

## 2. HUD's Unreasonable and Inexcusable Delay Has Prejudiced the Defendants.

A "party asserting laches must also establish that it has been prejudiced by the delay, that is, that the delay has 'cause[d] a disadvantage in asserting and establishing a claimed right or defense.'"[116] The doctrine is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."[117] "Just determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost."[118]

Due to HUD's unreasonable and inexcusable delay, Defendants are now prejudiced because they will be unable to present a full and fair defense on the merits due to the unavailability of a witnesses and records and the unreliability of memories of events from over six years ago. To begin, the Tonti Management employee that Turnipseed primarily spoke to regarding her application and her dog is now unavailable. Joan Delgiorno is no longer a Tonti Management employee, and after her departure, she moved to another state and underwent treatment for throat cancer, which involved removing her voice box.[119] Tonti Management has not had contact with Delgiorno for many years,[120] and HUD never interviewed her. Moreover, the memories of all fact witnesses have faded. And even the testimony gathered in the investigation is questionable because it was obtained years later. In response to one of HUD's questions in 2024, Turnipseed stated "I don't remember. That should all be in the paperwork I submitted 6 years ago."[121] Courts

---

116. *Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 710 (alteration in original) (quoting *In re Bohart*, 743 F.2d 313, 327 (5th Cir. 1984)).
117. *Id.* (quoting *Order of R.R. Tels. v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944)).
118. *Wilson v. Garcia*, 471 U.S. 261, 271 (1985).
119. Ex. 2, Tonti Decl.
120. *Id.*
121. Ex. 1, HUD Final Investigative Report at 13.

consistently rely "on faded memories of events long passed to find the prejudicial element of laches" is met.[122]

Next, documents, including pertinent medical records, may no longer be available. Seaside Behavioral Center, an inpatient psychiatric care and substance use treatment center at which Turnipseed treated in 2018, closed in 2024.[123] It is unclear whether those records were maintained after the closure. Additional evidence that Defendants would normally seek in discovery, including financials and communications, likewise may have since been deleted or are not recoverable. The Court should therefore find that HUD's unreasonable and inexcusable delay has prejudiced Defendants and concluded that the Government's claims are barred by the doctrine of laches.

## IV. CONCLUSION

For the forgoing reasons, the Court should grant Defendants' motion and dismiss this lawsuit with prejudice.

                                                Respectfully submitted,

                                                ADAMS AND REESE LLP

                                                 */s/ Luke G. LaHaye*
                                                Elizabeth A. Roussel (#27943)
                                                Luke G. LaHaye (#38809)
                                                701 Poydras Street, Suite 4500
                                                New Orleans, Louisiana 70139
                                                Tel: (504) 585-3234
                                                Fax: (504) 566-0210
                                                E-mail: elizabeth.roussel@arlaw.com
                                                                     luke.lahaye@arlaw.com

                                                *Attorney for Defendant Five*
                                                *Properties, LLC and APMT, LLC*

---

122. *EEOC v. La. Power & Light Co.*, No. 88-1147, 1989 WL 35915, at *4 (E.D. La. Apr. 10, 1989) (quoting *EEOC v. Indiana Bell Tel. Co.*, 641 F. Supp. 115, 125 (S.D. Ind. 1986)).
123. Google results for "seaside behavioral center New Orleans" reflect that Seaside is permanently closed.