# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CIVIL ACTION NO. 2:25-CV-001213** |
| | * | |
| | * | **SECTION J** |
| **VERSUS** | * | |
| | * | **JUDGE CARL J. BARBIER** |
| | * | |
| **FIVE PROPERTIES, LLC AND** | * | **DIVISION 4** |
| **APMT, LLC** | * | |
| | * | **MAGISTRATE JUDGE** |
| | * | **KAREN WELLS ROBY** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DECLARATION OF SUZANNE TONTI

Pursuant to 28 U.S.C. § 1746, Suzanne Tonti, duly authorized representative of Five Properties LLC and APMT, LLC d/b/a/ Tonti Management, declares under penalty of perjury as follows:

1.      My name is Suzanne Tonti.  I am a person of the full age of majority and competent to testify herein.  I am of sound mind and capable of making this declaration.  I have personal knowledge of the facts stated in this declaration, they are true and correct, and if called to testify in this regard, my testimony would be the same as set forth herein.

2.      I am a manager of Five Properties and Tonti Management.

3.      I am authorized by Five Properties and Tonti Management to make this declaration.

4.      In my capacity as manager, I have knowledge of the facts stated in this declaration.

5.      I make this declaration upon my review of Five Properties' and Tonti Management's records kept and maintained in the ordinary course of their business.  I am familiar

---

**EXHIBIT 2**

with the record keeping of Five Properties and Tonti Management. The attached exhibits are records made at or near the time by or from someone with knowledge. These records are kept in the course of the regularly conducted business of Five Properties and Tonti Management. Making and keeping these records is a regular practice of Five Properties and Tonti Management and vital to the conduct of their business.

6.      Dory Turnipseed completed an application to lease an apartment at Sunlake Apartments. A true and correct copy of her application is attached as Exhibit 2A.

7.      Turnipseed initially spoke to Joan DelGiorno, Tonti Management employee, regarding her application and her dog.

8.      Delgiorno is no longer a Tonti Management employee.

9.      After her departure, Delgiorno moved to another state, and underwent treatment for throat cancer, which involved removing her voice box.

10.      Tonti Management has not had contact with Delgiorno for many years.

11.      When Turnipseed met with Delgiorno to complete her application, Delgiorno filled out a guest card. A true and correct copy of the guest card is attached as Exhibit 2B.

12.      Turnipseed entered a lease to live at Sunlake. A true and correct copy of her lease and the lease addendums is attached as Exhibit 2C.

13.      In the morning on May 14, 2018, an exterminator was conducting routine preventive maintenance and discovered Turnipseed's dog in her apartment.

14.      The exterminator reported the dog to Tonti Management.

15.      Upon learning that Turnipseed impermissibly brought her dog onto the property, Tonti Management issued a notice of animal violation.

16. The notice of her animal violation was left on Turnipseed's door before Turnipseed notified Tonti Management that she had brought her dog onto the property.

17. After Turnipseed filed her HUD complaint, Five Properties and Tonti Management received notice of the complaint. A true and correct copy of HUD's acceptance letter and Turnipseed's HUD complaint is attached as Exhibit 2D and 2E.

18. On July 12, 2018, Five Properties and Tonti Management responded to the complaint. A true and correct copy of Five Properties and Tonti Management's response is attached as Exhibit 2F.

19. HUD sent a letter dated October 31, 2023, to Five Properties and Tonti Management explaining for the first time that it was unable to complete its investigation within 100 days from the filing of the complaint. A true and correct copy of HUD's 100-day letter is attached as Exhibit 2G.

20. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed in New Orleans, this _3_ day of August 2025.

Suzanne Tonti

## TONTI MANAGEMENT
### INDIVIDUAL APPLICATION FOR APARTMENT

Unfurnished ✓    Furnished _____    Corporate _____

Date _3/30/18_

Property Name _Sunlake_    Apartment # _054-23_   _w?_

Desired Date of Occupancy _4-15-18_    Monthly Rental Rate _620_

Lease Term _12 month_    Security Deposit _300.50_    Animal Fee _____

| Full Name of Applicant/Occupant | Date of Birth | |
|---|---|---|
| Dion Townsend | | |
| Home No. 504-402-3105   Cell Phone No. | Driver's License No./State | Social Security No. |

Marital Status: X Single ____ Married ____ Divorced ____ Separated   Email address: _____ @gmail.com

## ADDRESS HISTORY (Must Complete Each Box & Provide Minimum Past 2 Years)

| | Street Address & Apt # | City State & Zip | Move in (& Out) Date(s) | Rent/ Mortgage Amt | Community Name | Contact Name & Phone/Fax # | Reason for Moving |
|---|---|---|---|---|---|---|---|
| 1. Present | 6374 Beaune Dr | New Orleans LA 70124 | 2014 | $300/mo | — | — | Parent's House |
| 2. Previous | | | | | | | |

Have you or any occupant that will be living in this apartment ever:
(A) been evicted or asked to move out? (B) broken a rental agreement or lease contract? (C) declared bankruptcy?
(D) been sued for non-payment of rent? (E) been sued for damages to rental property?
(F) been involved in a fire or caused damage to rental property? __X__ No ____ Yes Explain:
Have you or anyone that will be living in this apartment ever been convicted of a felony or serious crime in any state or under the laws of the United States of America? __X__ No ____ Yes

Are you or any occupant who will be living in the apartment presently under arrest, indictment or charged with a felony or serious crime under the laws of any state or of the United States? __X__ No ____ Yes

Have you ever leased at a Tonti Management Property before? __X__ No ____ Yes   If yes, which property?

## EMPLOYMENT HISTORY (Last 12 months)

| Name Of Employer | Address | City/State/Zip Code |
|---|---|---|
| SES South America | 171 Pin Tan Dr | St. Rose, LA 70087 |
| **Position/Profession** | **How Long?** | **Work Phone No.** |
| Security/Labs Tech | 1.5 mo | 911 |
| **Gross Monthly Income** | **Name Of Supervisor** | **Supervisor's Phone No.** |
| 2000 - 3000 /mo | Roger Winters | 504-261-RR01 |
| **Previous Employer** | **Address** | **City/State/Zip Code** |
| | | |
| **Position/Profession** | **How Long?** | **Work Phone No.** |
| | | |
| **Gross Monthly Income** | **Name Of Supervisor** | **Supervisor's Phone No.** |
| | | |
| **Full Name of Spouse** | **Date Of Birth** | **Cell Phone No.** |
| | | |
| **Spouse's Social Security No.** | **Driver's License No./State** | |
| | | |
| **Spouse's Present Employer** | **Address** | **City/State/Zip Code** |
| | | |
| **Position/Profession** | **How Long?** | **Work Phone No.** |
| | | |
| **Gross Monthly Income** | **Name of Supervisor** | **Supervisor's Phone No.** |
| | | |

## ANIMAL INFORMATION (Visual Inspection & Photo Required)

Do You Have Any Animals?   Kind   Weight   Breed   Color   Age   Name   # Pounds Full Grown

✓ No   Yes

## OCCUPANT INFORMATION

List any person who will spend more than 7 days in the apartment during your lease term.

| Name | Relationship | Date Of Birth | Gender | Social Security No. |
|---|---|---|---|---|
| Dion Townsend | Self | | F | |
| | | | | |
| | | | | |

APP - Individual App for Apt 1/18

EXHIBIT

2A

List All Vehicles To Be Parked On The Premises (Cars, Trucks, Motorcycles, Etc.).

| Make/Model Of Vehicle | Year | License Plate# | State |
|---|---|---|---|
| JEEP RENEGADE | 2015 | EHJCC578 | LA |
| Make/Model Of Vehicle | Year | License Plate# | State |

| In Case Of Emergency Notify: | Work Phone No. | Home Phone No. |
|---|---|---|
| KIMBER FRIESEN | 914-462-0784 | SAME |
| Street Address | City/State/Zip Code | Relationship: BOYFRIEND |

In the event of serious illness or death of resident, the above person may_____ or may not_____ enter, remove, and/or store all contents
found in the dwelling, storerooms, common area and mail box.

| How Were You Referred To Us? (Check One) ___ Newspaper ___ Phone Book | ___ Tom.net _X_ Apartments.com |
|---|---|
| ___ Drive by/Walk In ___ Previous Resident ___ Resident Referral (see below) | ___ Locator (see below) |
| ___ Other Referral (explain below) ___ Other Internet (explain below) | |

| If You were Referred by a Tenti Mgmt. Resident | Name | Property | Apt # |
|---|---|---|---|

| Name Of Rental Agency Or Locator Service | Rental Agent's Name |
|---|---|

Other Information:

## APPLICATION AGREEMENT

Applicant has paid $___35___ as a nonrefundable Application Fee.

Applicant(s) have deposited herewith the sum of $__350 50 -__, receipt of which is hereby acknowledged, as a non-interest bearing deposit (and not as rental payment) to be refunded as hereinafter provided in the Apartment Lease. In the event this application is approved and the applicant(s) fail(s) or refuse(s) to enter into the contemplated Apartment Lease, Lessor shall retain the said deposit to cover the cost of taking and processing the application and removing the premises from the market and holding same for applicant(s). If applicant(s) withdraw(s) this application or notifies Lessor that he/she/it has changed his/her/its mind about taking the dwelling unit, the deposit will be retained by Lessor. In the event this application is disapproved, or for any other reason for which the Lessor is responsible and the Apartment Lease is not consummated, this deposit will be returned to applicant(s).

This application is made with the understanding that it is subject to acceptance by the Lessor and subject to execution by an agent of Lessor and execution of an Apartment Lease covering said premises. If applicant has not received notice of approval or non-approval from Lessor, applicant(s) shall be responsible for contacting Lessor's representative to verify approval or non-approval.

ACKNOWLEDGMENT BY PERSON(S) SIGNING. The undersigned person(s) represent(s) all the above statements as true and complete and hereby authorize(s) verification of such information via consumer reports, rental history reports, criminal history reports and other means, now, upon any contemplated renewal, and after lease termination if any funds are due. Such authorization does not require Lessor to make verifications or investigations. Failure to answer any of the above inquiries shall entitle Lessor to reject this application. False information given above shall entitle Lessor to (1) reject this application, (2) retain the application fee(s) and deposit(s) for Lessor's time and expenses of processing this application, and (3) terminate Lessee's right of occupancy. I understand that this application shall be made a part of the Apartment Lease and that giving false information in this application, upon discovery by Lessor, shall be considered a breach of the Apartment Lease and a default under the lease. False information may also constitute a serious criminal offense under the laws of this State. In any lawsuit, complaint, or claim filed with a court of competent jurisdiction or a regulatory, administrative or law enforcement agency Lessor is entitled to recover attorney's fees and all other costs associated with said lawsuit, complaint, or claim if Lessor prevails. Lessor reserves the right to regularly and routinely furnish information to consumer reporting agencies about performance of lease obligations by Lessee(s). Such information may be reported at any time and may include both favorable and unfavorable information regarding a Lessee's compliance with the lease, rules, and financial obligations.

Signature of Applicant _____   Date _3/3/18_

Signature of Applicant's Spouse _____   Date_____

APP - Individual App for Apt  1/18



# Tonti
## MANAGEMENT

# ...Welcome to Our Community!

## GUEST CARD

How did you hear about us? _Apartment.com_   Date _3/20/18_   Time _____

| Referrals | Print Ads/Other | Internet |
|---|---|---|
| O Previous Resident | O Newspaper | ☑ Apartments.com    O Apartment Finders.com |
| O Resident Referral _____ | O Phone Book | O Tonti.net    O NOLA.com |
| O Other referral (explain) _____ | O Drive By/Walk In | O Google.com    O Craigslist |
| O Locator | | O Zillow.com    O Other internet _____ |

The following information will greatly assist us in helping you select your new home:

Your Name _DORY TURNIPSEED_   Preference: Harahan / Metairie / Kenner / (Any)

Current address: _6379 BELLAIRE DR_   Day Phone: _504.402.3105_

City _NEW ORLEANS_   State _LA_   Zip _70124_

What size apt. are you looking for? _Studio_   What is your price range? _< 700$/MO_

When do you plan to move? _ASAP_   How many will be living in the apartment? _1_

List Leaseholders/Occupants: _DORY TURNIPSEED_

Do you have past Verifiable Rental? _NO_ If so, is it private owner or management company? _____

What is prompting your move at this time? _____

May we have the name of your current employer & position? _SGS NORTH AMERICA - MINERALS DIVISION_

For qualification purposes, please provide us with an estimate of your gross monthly income _2500_

Will you be bringing a ~~pet~~ ANIMAL? _NO_ What is the ~~pet's~~ ANIMAL weight and description? _____

Guest Signature: _____   Leasing Consultant _____

APP - Guest Card 3/17

**EXHIBIT 2B**



**Tonti** MANAGEMENT     **APARTMENT LEASE**     Date: 04/13/18

**PARTIES**

Tonti Management and the owner of the property (hereinafter collectively referred to as Lessor in this lease and all addenda and attachments to this lease) hereby leases to **DORY TURNIPSEED** (hereinafter referred to as Lessee) the following described property: The leased premises shall be occupied by the Lessee and the following persons only; A |A

No additional occupants are authorized. Any person who intends to inhabit the property for more than 7 days full or partial, during the term of the LEASE shall be considered an AUTHORIZED OCCUPANT and is required to apply and be pre-approved. If approved, they will be required to sign the LEASE and all addenda thereto and are subject to all terms, limitations and conditions of this LEASE and addenda and supplemental Lease documents executed by the Lessor. It is the responsibility of the Lessee to advise Lessor, in writing beforehand, of any person who will be considered an Authorized Occupant. A parent who executes this LEASE, is considered to be executing the LEASE on his/her own behalf and on behalf of all minor children that are in their care either permanently or temporarily. For purposes of this lease and all addenda attached hereto, the term Lessee shall include the plural and all occupants. Lessor is under no obligation to approve an additional authorized occupant and may decline to do so. Additional deposits apply.

**PREMISES**

Apartment No. 854-23 at 854 JOE YENNI BLVD. APT. 23 in KENNER, LA, for use by resident as private residence only. The leased premises shall include common areas, common accessories, adjacent premises, balconies, porches, stairways, the roof and other such areas.

**TERM**

This lease is for a term commencing on 04/13/18, and ending on 10/31/18. ✓

**AUTOMATIC RENEWAL**

If Lessee, or Lessor, desires that this lease terminate at the expiration of its term, he/she/it must give to the other party written notice at least 30 days prior to that date. Failure of either party to give this required notice will automatically renew this lease and all of the terms thereof *except that the term of the lease will be for one month and the rental price will be as agreed upon in any addendum.* This provision is a continuing one and will apply at the expiration of the original term and at the expiration of each subsequent term.

**RENT AND RENT COLLECTION PROCEDURES**

This lease is made for and in consideration of a monthly rental of the following:

| | | | |
|---|---|---|---|
| Base Rent: | $630.00 | Other: | $N/A |
| W.E.T. Charge: | $ 30.00 | | |

**TOTAL RENT of $660.00** per month payable in advance *on or before the 1st day of each month* at the Sunlake Apts Rental Center, 838 Joe Yenni Blvd., Kenner, LA 70065.

Payment can be made by [X] rent check, [X] money order or [X] cashiers check. Checks should be made payable to **Tonti Management**. Only one rent check is accepted per apartment. Partial rent payment will not be accepted. We do not accept cash.

All rents are due by 2:00 p.m. on the 1st of each month. Under no circumstances does Lessor extend, allow or recognize "grace periods" allowing for payment of rent beyond 2:00 p.m. on the 1st of each month, even in the event of mandatory or voluntary evacuations from the premises. If rent is not paid by 2:00 p.m. on the 1st of the month, or if a check is not honored on presentation for any reason whatsoever, Lessor may immediately file for eviction for non-payment of rent. The failure of Lessor to institute eviction proceedings after 2:00 p.m. on the 1st of the month shall not constitute or be construed as the recognition of a "grace period," nor shall it constitute or be construed as a waiver or relinquishment of Lessor's right to seek immediate eviction of Lessee for late payment of rent, or any other basis as permitted herein, even in the event of mandatory or voluntary evacuations from the premises. If, however, rent is tendered and accepted after 2:00 p.m. on the 3rd of the month, an additional $50 late fee will be charged and payment must be made by either cashier's check or money order. If eviction is filed, an additional $150 eviction fee and court costs will be charged. If a check is not honored, an additional $50 NSF fee will be charged, all future rents must be paid by cashier's check or money order, and payment by check will be considered non-payment of rent. These penalty provisions are not to be considered a waiver or relinquishment of any of the other rights or remedies of Lessor. [Fees subject to change to reflect the charges at the time penalty is incurred.]

Lessee hereby agrees to fully cooperate with Lessor, or anyone acting on Lessor's behalf, to collect any rent, deposit or other payments Lessee makes with a check, money order, cashier's check or other negotiable instrument that is lost, stolen, or otherwise missing or misappropriated. Lessee's failure to provide their immediate, full and unconditional cooperation will result in a material breach and default of this lease, resulting in full acceleration of the lease and/or eviction. Money orders, cashier's checks and/or cash may not be placed in the drop box.

Lessee(s): Initial 4|13|18 Initial_____     Authorized Occupant(s): Initial_____ Initial_____

APT - Apartment Lease 2/18     Lease - Page 1 of 6

**EXHIBIT**

**2C**

Lessor acknowledges receipt from ~see of the sum of $396.00 Dollars wh ~ is pro-rated rent for 18 days from · the date of commencement of this lease to the first day of the following month.

**SECURITY DEPOSIT** _~ ~ $ 225 - ~~_
Upon execution of this lease contract, Lessee agrees to deposit with Lessor, the receipt of which is hereby acknowledged, the sum of $350.00. This deposit, which is non-interest bearing, is to be held by Lessor _as security for the full and faithful performance of all terms and conditions of this lease._ This security deposit is not an advance rental payment and Lessee may not deduct any portion of the deposit from rent due to Lessor. In the event of forfeiture of the security deposit due to Lessee's failure to full and faithfully perform all of the terms and conditions of the lease, Lessor retains all of its other rights and remedies. Lessee does not have the right to cancel this lease and avoid his/her/its obligations thereunder by forfeiting the said security deposit.
Lessor will mail security deposit refund (less itemized deductions) _within 30 days_ after the premises have been vacated and inspected by Lessor provided said leased premises are returned to Lessor in as good condition as they were at the time Lessee first occupied same, subject only to normal wear and tear, and after all keys and key tags are surrendered to Lessor.    In the event of any damage to the leased premises or equipment therein, reasonable wear and tear excepted, caused by Lessee, Lessee's family, guests, agents, or Authorized Occupant(s), Lessee agrees to pay Lessor, _when billed,_ the full amount necessary to repair or replace the damaged premises or equipment without benefit of depreciation. Any such charges shall be due as additional rent.
Deductions will be made from the security deposit to reimburse Lessor for the cost of repairing any damage to the premises or equipment or the cost of replacing any of the articles or equipment that may be damaged beyond repair, lost or missing at the termination of the lease. Deductions will also be made to cover any unpaid amounts owed to Lessor for any such damage, rents, fees, or loss occurring prior to termination of the lease and for which Lessee has been billed. In the event that such damages or cleaning charges exceed the amount of the security deposit, Lessee agrees to pay all excess cost to Lessor. In the event there has been a forfeiture of the security deposit, charges for damages and cleaning shall be paid in addition to the amount of the said security deposit.

**ANIMALS AND ANIMAL DISCLOSURE** · ·
Animals are permitted at Lessor's sole discretion and only after mutual written agreement between Lessor and Lessee. Lessee's signature is required on Animal Disclosure and Animal Lease Addendum. There will be an additional deposit plus twice the applicable animal fee for animal violations. Feeding stray animals on the property is prohibited.

**SUB LEASE**
Lessee is not permitted to post any "For Rent" signs, rent, sublet or grant use or possession of the leased premises without the written consent of Lessor and then only in accordance with this lease.

**DEFAULT, ABANDONMENT OR EVICTION**
Should the Lessee fail to pay the rent or any other charges arising under this lease promptly as stipulated, violate any of the terms and conditions of the lease, or should the premises be abandoned (it being agreed that an absence of Lessee from the leased premises for five consecutive days after rentals have become delinquent shall create a · · conclusive presumption of abandonment) by Lessee, or should Lessee begin to remove furniture or any substantial· portion of Lessee's personal property to the detriment of Lessor's lien, or should voluntary or involuntary bankruptcy proceedings be commenced by or against Lessee, or should Lessee make an assignment for the benefit of creditors, then in any of said events, Lessee shall be ipso facto in default and the rent for the whole of the unexpired term of the lease together with the attorney's fees and costs shall immediately become due. However, Lessor may proceed one or more times for past due installments without prejudicing his rights to proceed later for the rent for the remaining term of the lease. In the event of.any such default Lessor retains the option to cancel the lease and obtain possession of the premises. Upon termination, cancellation, dissolution and/or default of this lease for any reason, Lessee hereby expressly waives the five-day notice to vacate the premises prior to institution of eviction proceedings in accordance with La. C.C.P. art. 4701-4705. Lessee further waives notice of default in accordance with La. C.C. art. 1991 and notice of dissolution of the lease in accordance with La. C.C. art. 2017. ·In the event of such cancellation and eviction, Lessee is obligated to pay any and all rent and eviction costs·due and owing through the last day said premises are occupied. ·

**MOLD DISCLOSURE**
Lessor does not guarantee the premises are free of any toxic molds and/or fungi hazards. By execution of this lease agreement, Lessee agrees to indemnify, save and hold Lessor harmless from any liability whatsoever including but not limited to health conditions/illnesses, medical bills, attorney's fees, etc., should toxic mold and/or fungi hazards be· found to be present. Lessee agrees·to compensate Lessor for reasonable attorney's fees to defend any action brought against Lessor by Lessee regarding potential toxic mold liability. Should toxic mold and/or fungi hazards be found, via a state licensed inspector for mold and fungi hazards, Lessor and Lessee can cancel the lease agreement upon a 30 day written notice to vacate premises provided by either party. Lessor is not obligated to perform mold testing and may decline to do so, nor is Lessor liable for any testing performed by Lessee.

Lessee(s): Initial _4|12|18_ Initial _DK_  Authorized Occupant(s): Initial_____ Initial_____ · ·

**OTHER VIOLATIONS & NUISANCE**

Should the Lessee, his family, guests, agents, or Authorized Occupant(s) at any time violate any of the terms or conditions of this lease, or should the Lessee discontinue the use of the premises for the purposes for which they are rented, or fail to maintain a standard of behavior consistent with the consideration necessary to provide reasonable safety, peace and quiet, and cleanliness to the other residents and employees in the apartment community, such as by being boisterous or disorderly, creating undue noise, disturbance or nuisance of any nature or kind, engaging in any unlawful or immoral activities, or failure to abide by the community policies as specified below, then Lessee shall be ipso facto in default and Lessor shall have the option to demand the rent for the whole unexpired term of the lease which shall at once become due and exigible, or to immediately cancel this lease and obtain possession of the premises. Upon termination, cancellation, dissolution and/or default of this lease for any reason, Lessee hereby expressly waives the five-day notice to vacate the premises prior to institution of eviction proceedings in accordance with La. C.C.P. art. 4701-4705. Lessee further waives notice of default in accordance with La. C.C. art. 1991 and notice of dissolution of the lease in accordance with La. C.C. art. 2017.

**COMMUNITY POLICIES**

Lessee acknowledges receipt of a copy of the Community Policies, which are attached to and form a part of this lease. Lessee is responsible for his family, guests, agents, or Authorized Occupant(s) compliance with all such policies and with all reasonable policies hereafter adopted by the Lessor and posted in or about the apartment community and/or mailed or delivered to Lessee. The failure to abide by the Community Policies described herein shall constitute a default under the Lease and shall authorize Lessor to enforce all of the rights contained in this Lease including, but not limited to, the option to cancel the Lease and obtain possession of the premises.

**CONDITION OF PREMISES**

Lessee accepts the apartment, fixtures and furniture (if applicable) as clean and in good working condition and agrees to keep them in such condition during the term of the lease at the expense of the Lessee, and to return them to Lessor in the same condition at the termination of the lease, normal decay, wear and tear excepted. Lessee agrees to pay a non-refundable cleaning fee in the amount of **$105.00** to cover only shampooing of the carpet after Lessee has vacated. The cleaning fee does not cover stain removal, damages, cleaning of fixtures or appliances, or any other items. Lessee will be given a <u>New Lessee Checklist & Damage Disclaimer</u> form on or before move in. Within 72 hours after move in, Lessee must note on the form all defects or damages and return it to Lessor. Failure to return the completed form within that time period shall be conclusive proof that all appliances and equipment are in good operating condition, and the apartment is otherwise free of any defects or damages.

Should the property be destroyed or materially damaged by fire or other unforeseen occurrence not due to any fault or neglect of Lessee so as to render it wholly unfit for occupancy, then Lessee shall be entitled to a credit for the unexpired term of the lease. Should the leased premises remain habitable following an unforeseen occurrence that damages a portion of the leased premises, or interrupts the usual services or amenities, including disruption in utilities by service provider, then Lessee shall be bound by the terms of the lease. Lessee shall not have cause to cancel the lease before the expiration of its current term, demand a refund of the security deposit, or reduce or withhold the monthly rent following the occurrence, provided that Lessor makes a good faith attempt to repair the damage or restore the interrupted services or amenities as soon as reasonably possible under the circumstances.

**OCCUPANCY OF APARTMENT**

Should Lessee be unable to obtain occupancy on the date of the beginning of the lease due to causes beyond control of the Lessor, this lease shall not be affected thereby, except that Lessee shall owe rent beginning only with the day on which he/she/it can obtain possession. Should an evacuation be declared, or should Lessee evacuate or leave the leased premises for any reason whatsoever, Rent Collection Procedures and all other terms of this lease will remain in effect. An evacuation does not constitute an interruption in Lessee's right of occupancy or lease obligations.

In the event Lessee evacuates or leaves the leased premises for any reason, or in the event of a power failure, Lessee agrees to empty and clean the refrigerator of all perishable food, shut off the breaker and leave the refrigerator door open. If spoiled food, moisture or any other causes render the refrigerator unsuitable for use, Lessee shall be responsible for all costs associated with the cleaning, disposal and/or full replacement cost of the refrigerator, without benefit of depreciation.

**ADDITIONS & ALTERATIONS**

Lessee shall not make or allow to be made, any additions or alterations to the premises, including changing or adding locks, without <u>written</u> permission of Lessor. Lessee agrees to provide Lessor with a key(s) to the apartment for immediate access in case of emergency. Any additions made to the property by the Lessee shall become the property of Lessor at the termination of this lease unless otherwise stipulated herein. No holes shall be drilled in the walls, woodwork or floors. No antenna or satellite dish installations are permitted without signing and complying with the Satellite Dish and Antenna Addendum. No painting or papering of walls is permitted.

Lessee(s): Initial 4 13 B Initial_____    Authorized Occupant(s): Initial_____ Initial D P

## SIGNS & ACCESS

Lessor or his agents or employees shall have the right to enter the premises to make repairs necessary for the preservation of the premises without giving prior notice to the Lessee. Lessee shall also give Lessor access to the premises without notice at reasonable intervals between the hours of 8:30 AM TO 6:00 PM for the purpose of responding to repair requests, making repairs or replacements, estimating repair costs, performing pest control, conducting preventative maintenance, conducting inspections or investigations for reported or reasonably suspected lease violations or resident complaints including but not limited to unauthorized occupants, animals, illegal activity, removing unauthorized devices or window coverings, to allow person(s) to enter as authorized by Lessee(s),and removing health or safety hazards. The premises may be entered to allow entry by a law enforcement officer with a search or arrest warrant or in hot pursuit. Lessee's unreasonable delay or failure to permit access to the premises shall be deemed a breach of the lease resulting in immediate dissolution, termination of the right of occupancy, eviction and forfeiture of the security deposit. Lessor reserves the right to post on the premises "For Sale" or "For Rent" signs at all times. Lessee shall allow parties authorized by the Lessor to visit the premises at reasonable hours in view of the sale, purchase and/or financing of the property during the entire term of this lease and In view of renting for 30 days prior to the expiration of this lease.

## ADMINISTRATIVE, COLLECTION, & EVICTION FEES

If after the Lessee vacates the premises, and it is determined that there is a balance due, Lessor shall provide written notice to Lessee at the address provided by Lessee at move-out or last known address. Should Lessee fail to respond within fifteen (15) days of mailing notice of the amount due, or if for any other reason Lessor finds it necessary to refer the matter to its internal collection manager, Lessee agrees to pay an Administrative Collection Fee of $250. Lessee further agrees that if an attorney is employed to protect any rights of the Lessor hereunder, Lessee will pay the reasonable fees of such attorney with a minimum of $350. Lessee further agrees to pay all court costs and sheriff's charges if any. Should Lessor find it necessary to post an eviction for any reason, Lessee agrees to pay ALL eviction fees incurred.

## SECURITY

Police protection is the function of local parish law enforcement authorities. Lessor cannot be responsible for personal safety, or the contents of any apartment(s) or automobile(s). Any courtesy officers seen on Lessor's property have been employed to patrol our rental offices and physical plant only. They are not for the protection of any Lessee, his family, guests, agents, or Authorized Occupant(s). Lessor cannot and does not offer personal security, nor can Lessor protect against unauthorized visitors to the communities. Lessee warrants that Lessor, its agents and employees have made no representations regarding any criminal activity that may have occurred at the subject apartment community and surrounding area. It is the duty of each applicant to verify the fitness or suitability of the apartment community and surrounding area.

## OTHER

The failure of Lessor to insist upon the strict performance of the terms, covenants, agreements and conditions hereby contained shall not constitute or be construed as a waiver or relinquishment of the Lessor's right thereafter to enforce any such terms, covenants, agreements and conditions, but the same shall continue in full force and effect.

It is understood that the terms "Lessor" and "Lessee" are used in this agreement, and they shall include the plural and shall apply to persons, both male and female. All obligations of Lessees are several and in solido.

This lease, whether or not recorded, shall be junior and subordinate to any mortgage hereafter placed by the Lessor on the entire property of which the leased premises form a part.

In the event that during the term of this lease, or any renewal hereof, the real estate taxes or other federal or state taxes or assessments, or the utility costs, or any combination of the above should increase above the amount paid at the inception of this lease, the Lessee agrees to pay his proportionate share of such increase and any successive increases. Posted utility charges are subject to change. Such payment(s) by Lessee shall be due monthly as increased rent throughout the remainder of Lessee's occupancy, and all such sums may be withheld from Lessee's security deposit if not fully paid at the time Lessee vacates the premises. A 30 day notice will be given to Lessee before any increase is made.

## WAIVER OF NOTICE

Upon termination, cancellation, dissolution and/or default of this lease for any reason, Lessee hereby expressly waives the five-day notice to vacate the premises prior to institution of eviction proceedings in accordance with La. C.C.P. art. 4701-4705.

Lessee further waives notice of default in accordance with La. C.C. art. 1991 and notice of dissolution of the lease in accordance with La. C.C. art. 2017.

## CHANGES TO LEASE

The Agent for the Lessor DOES NOT have the authority to alter this lease or verbally release Lessee from any of its terms. Lessee does not have the right to alter this lease in any way. Lessor does not write transfer clauses into any leases.

Lessee(s): Initial 4|(3|18  Initial_____   Authorized Occupant(s): Initial_____   Initial_____

APT - Apartment Lease   2/18   Lease - Page 4 of 6

**LEASE DISCLOSURE: CANCELLATION POLICY**

I. During the initial lease term, from 04/13/18 to 10/31/18, this lease may not be cancelled by the Lessee, *for any reason whatsoever*. Lessee's failure to fulfill the initial term of the lease in full will be a default and grant to Lessor all rights as set forth in the "Default, Abandonment or Eviction" section of this lease.

II. Should it become necessary for Lessee to cancel in a subsequent lease term or renewal lease, *for any reason whatsoever*, cancellation policy is as follows:

1. Lessee will forfeit the Security Deposit.
2. Lessee will pay a cancellation fee equal to one month's total rent.
3. Lessee will be required to give Lessor a written notice 30 days prior to vacating the leased premises.
4. Failure to give Lessor 30 days written notice will result in a notice fee equal to one month's total rent.
5. Any other expenses or charges including amounts owed for visible damages on preliminary walk thru must be paid within 5 days of notice or when billed, whichever is earlier.
6. Failure to pay these charges prior to move out will trigger the default clause in this lease making the whole unexpired term due immediately.

**OTHER CONDITIONS**

No rent refunds - Please pay pro-rated rent when vacating the leased premises.

Amounts owed Lessor are payable *when billed,* including, but not limited to, invoices for damages, fees, fines, unfulfilled leases, and unpaid rents. Outstanding balances will be turned over to the collection department for handling after 30 days. Interest will accrue at the rate of 15% per annum beginning 30 days after initial due date.

Credit Reports - Lessee expressly authorizes Lessor or Lessor's agent (including a collection agency) to obtain Lessee's consumer credit report, both during the term of the lease and thereafter, which Lessor or Lessor's agent may use if attempting to collect past due rent payments, late fees, or other amounts due from Lessee.

Incapacitation: Should a resident suffer any incapacity or be unable to manage his or her own affairs, the Lessor reserves the right to ask for return of premises.

Attorney's Fees and Costs: This clause applies only to claims and disputes that cannot be arbitrated as a matter of law. In any lawsuit, complaint, or claim filed with a court of competent jurisdiction or a regulatory, administrative or law enforcement agency, relating in any way to this lease agreement or the leased premises or rights under any law, statute, or government regulation, Lessor is entitled to recover attorney's fees and all other costs associated with said lawsuit, complaint, or claim if Lessor prevails.

W.E.T. charges may include water, exterminating, trash removal, gas, sewerage, mosquito control and Lafreniere Park Charges.

Lessees with individual gas meters are required to keep the gas connected during the entire term of the lease.

Electrical service must remain in effect during the entire lease term. Failure to do so may result in eviction.

Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances or Lessee may be subject to additional charges.

Increase in W.E.T. Charges: In the event that during the term of this lease, or any renewal hereof, W.E.T.charges increase above the amount paid at the inception of this lease, the Lessee agrees to pay his proportionate share of such increase and any successive increases. All fees and penalties are subject to change.

All fees and penalties in the lease and all addenda including but not limited to service fees, maintenance charges, exterminating fees, etc. are subject to change.

**SEX OFFENDER NOTIFICATION**

Lessor hereby notifies Lessee that the Louisiana Bureau of Criminal Identification and Information maintains a State Sex Offender and Child Predator Registry which provides public access to the statewide database disclosing the locations of individuals required to register pursuant to La. R.S. 15:540, et seq. (The "Registrants" or "Sex Offenders"). The following website, telephone number and address may be used to access the statewide database containing the identity, address, pictures and conviction record of Registrants: By Internet: www.lasocpr.lsp.org/socpr, by phone at (800)-858-0561 or (225)925-6100, or by mail at P. O. Box 66614, Mail Slip #18, Baton Rouge, Louisiana 70896. Lessee can also email State Services at SOCPR@dps.state.la.us for more information.

**LEAD PAINT DISCLOSURE**

If the property was built prior to 1978, the Lessee will receive a disclosure form and pamphlet as required by Federal Law.

Lessee(s): Initial 4|13|18 Initial_____     Authorized Occupant(s): Initial_____ Initial _____

APT - Apartment Lease    2/18          Lease - Page 5 of 6

**LIABILITY**

If any employee of Lessor renders any other services (including but not limited to parking, washing or delivery of automobiles, handling of furniture or other articles, cleaning the rented premises, package delivery, or any other service) for or at the request of Lessee, Authorized Occupant(s), his family, employees or guests then, for the purpose of such service, such employees shall be deemed the servant of Lessee, regardless of whether or not payment is arranged for such service, and Lessee agrees to relieve Lessor and hold Lessor and its agents harmless from any and all liability in connection with such services.

The Lessor and its agents shall not be liable to Lessee, or to Lessee's employees, patrons and visitors, or to any other person for any damage to person or property caused by an act, omission or neglect of Lessee or any other resident of said demised premises, and Lessee agrees to hold Lessor and its agents harmless from all claims for any such damage, whether the injury occurs on or off the leased premises.

Lessee assumes responsibility for the condition of the premises. Lessor will not be responsible for damage caused by leaks, in the roof, by bursting of pipes resulting from a freeze or otherwise, or any vices or defects in the leased property, or the consequences thereof, except in the case of a positive neglect or failure to take action toward remedy of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in writing, of any such defects, Lessee will become responsible for any damage resulting to the Lessor or other parties.

Lessee and Authorized Occupant(s) hereby agree to release, hold harmless, defend and indemnify Lessor and its agents for any damage or injury to persons or property caused as a result of the use of the leased premise including, but not limited to the use of the tennis courts, swimming pools and all other recreational facilities by Lessee, or any person making use of said facilities through the use, permission or consent of Lessee or Authorized Occupant(s). Lessee and Authorized Occupant(s) further agree not to use or permit the use of alcoholic beverages within the swimming pool and other public areas.

The Lessee shall not allow more than two (2) guests to use the pool at any one time. All occupants and guests must be accompanied by a leaseholder at all times.

The Lessee assumes full and complete responsibility for the conduct of Lessee's occupants and/or guests. The Swimming Pool and Tennis Court Rules contained in the Community Policies are incorporated in this lease by reference, as if copied in their entirety.

***THIS IS A BINDING LEGAL CONTRACT -- READ ALL DOCUMENTS BEFORE SIGNING.***

Apartment Lease and all Addenda thereto (if any) constitute the entire agreement of the parties. The undersigned Lessee(s) and authorized occupant(s) have read this lease and all addenda, understand what they have signed and further understand that the lease and all addenda constitute a legal and binding contract.

| | |
|---|---|
| _____ | _____ |
| Lessee | Lessee |
| | |
| _____ | _____ |
| Authorized Occupant | Authorized Occupant |

**Renters Insurance:** Lessee hereby agrees to obtain renter's insurance with a minimum of $100,000 personal liability coverage listing Tonti Management as an additional insured/interest, containing a waiver of subrogation, and maintain it throughout the entire lease term. Lessee further, individually and on behalf of any insurance carrier providing the required coverage, waives any and all rights of subrogation against Lessor.

**Other:** No Animals -- There will be an additional deposit plus twice the applicable animal fee for animal violations. With prior written approval, there will be an additional deposit and animal fee. Tonti Management is under no obligation to approve an additional authorized occupant and may decline to do so. Additional deposits apply.

Executed at Kenner, Louisiana This day **04/13/18**

_____          _____
Lessee                                        Lessee

_____          _____
Authorized Occupant                    Authorized Occupant

Agent for Lessor

Lessee(s): Initial 4|18|18   Initial_____          Authorized Occupant(s): Initial_____   Initial_____
APT - Apartment Lease  2/18          Lease - Page 6 of 6


**MANAGEMENT**

# FIRE SAFETY IS EVERYONE'S RESPONSIBILITY

Fires are a serious problem in apartment communities, much more so than in a single family dwelling due to the number of families living within each building. Though damage is usually confined to property loss and damage, the loss of personal items can be quite an emotional experience.

Lessor is not responsible for loss or damage to personal property, which is why Lessor requires all Lessees to obtain renter's insurance. Personal property is solely Lessee's responsibility. The Lessor's insurance coverage is for the buildings only. It **DOES NOT** cover Lessee's, Lessee's family's, guests', agents' or Authorized Occupant(s)'s personal property.

# CALL THE FIRE DEPARTMENT (911) IMMEDIATELY

**Replace dead batteries immediately.** Make sure smoke detectors operate properly and test every 3 months. Smoke detectors alert you to fire right away. If you notice that smoke detectors in public hallways are beeping, please contact the office so that batteries can be changed or electrical systems checked. If your smoke detector or water detector is beeping in your apartment, replace the battery. If it still beeps, notify the office immediately.

**An Ounce of Prevention:** Prevention is your best insurance against fire. Take these simple fire safety precautions to prevent fires from starting.

- Never leave cooking unattended. 2 out of 5 deaths in home cooking fires occur because the cooking was left unattended.
- Keep ovens and stove tops clean and free of grease.
- DO NOT STORE pots or flammable objects on top or near the stove. Curtains, potholders, dishtowels, food packaging and pots containing food can easily catch fire.
- Let cooking grease cool and pour into a metal can. Heat cooking oil slowly and never leave hot oil unattended.
- Monitor children carefully. Do not let children cook on the range. Keep lighters and matches out of the reach of children.
- Avoid cooking while intoxicated, medicated or sleepy.
- Rather than trash cans, use an empty coffee can for ashtray disposal.
- Do not remove your smoke alarm or battery. Test alarms every 3 months to make sure they work.
- Do not store gas-operated tools or vehicles (motorcycles) inside the apartment or under stairwells.
- Do not use water heater or air conditioner closets for storage.
- Barbecue grills, flammable materials and electric grills are not allowed on balconies or patios.
- Never smoke in bed or while medicated or drowsy.
- Do not overload extension cords or run cords under carpets or through doorways.
- Notify the manager of any electrical or gas problems immediately.
- Do not leave Christmas tree lights on or a burning fireplace unattended.
- Plug-in air fresheners, space heaters and deep pot stove top frying are prohibited.

**KNOW WHERE YOUR FIRE EXTINGU. ER IS LOCATED AN HOW TO USE IT.**

The extinguisher should be shaken once a month to ensure the chemicals have not compressed.

If you have a fire -- call 911 <u>before</u> attempting to put it out or attempting to notify the Rental Office. If fire extinguisher cannot put out the fire, leave the apartment immediately.

**HOW TO USE YOUR FIRE EXTINGUISHER**

1. Pull pin. Hold unit upright.
2. Aim at base of fire. Stand back 6 to 8 feet.
3. Squeeze lever and
4. Sweep side to side

<center>

**NEVER RISK YOUR SAFETY, CALL 911 IMMEDIATELY!**

**AFTER YOU HAVE CALLED 911 AND ARE SAFE, NOTIFY THE RENTAL OFFICE.**

</center>

**WHAT TO DO IF FIRE STRIKES**

Plan and practice an escape route and plan a meeting place outdoors to ensure everyone has gotten out of the apartment safely. NEVER go back into a burning apartment building. Keep exit & stairwell doors closed at all times.

Do not rush out of your apartment into the hallway. First, feel the door. If it is hot, use another way out. If the door is cool, leave by the nearest exit.

Use the stairs. <u>Close all doors behind you to slow fire spread.</u>

If your planned escape route becomes smoky, get down on your hands and knees and crawl. Smoke rises, so the cleanest air is near the floor.

Never go back into the apartment or building. Go directly to your planned meeting place and stay there. If you think someone is trapped inside, notify the fire department.

If you can not escape your apartment, stuff wet towels, sheets and clothes around the door and vents to keep smoke out. Call the fire department and tell them where you are. If no smoke is coming into the room you are in, open a window slightly. Stay low and wave a bright cloth, towel, or sheet out a window to signal your location.

Remember, by accepting your responsibility to keep your apartment safe from fire, you are not only protecting yourself but your neighbors as well. A little bit of planning and awareness can make the difference between safety and disaster for everyone.

**REPORT ALL FIRES NO MATTER HOW SMALL!** Only the fire department can determine if the fire will not re-ignite once it has been extinguished.

<center>

# IN CASE OF FIRE, CALL 911

</center>

| | |
|---|---|
| Lessee | Lessee |
| Authorized Occupant | Authorized Occupant |
| Date  4\|13\|2018    Apt. No.  854-2B | Agent for Lessor |



**MANAGEMENT**

## RESPONSIBILITY FOR APPLIANCES AGREEMENT

Lessee accepts responsibility for <u>turning off all appliances and faucets whenever leaving the apartment and before falling asleep - intentionally or unintentionally - even if expecting to do so for only a few minutes.</u>

### *FIRES* - IT TAKES ONLY 3 MINUTES FOR A FIRE
### TO IGNITE AN ENTIRE BUILDING  (Call 911 Immediately!)

Lessee agrees to the following:

* TO NOT LEAVE POTS UNATTENDED on top the stove or in the oven.  A pot containing food and grease left on an active stove is the #1 cause of fires.  The stovetop and oven should be kept clean and free of grease.  Knobs should be turned to the off position and all pots and pans removed when not in use.

* TO NOT LEAVE UNATTENDED irons, curling irons, clothes dryers, fires in fireplaces, burning candles and lit cigarettes which can also ignite fires quickly.  Lessee agrees to clean CLOTHES DRYER FILTERS after every use and clean monthly with water and soft brush to remove film from dryer sheets.

### *FLOODS*

Lessee agrees to the following:

* TO NOT LEAVE UNATTENDED dishwashers and/or washing machines which can leak or overflow and flood several apartments at once.  Do not overload washing machines.

* TO NOT LEAVE UNATTENDED faucets running in sinks and/or tubs which can overflow and cause flooding.

<u>Lessee understands and agrees if the premises is left or Lessee falls asleep with a candle burning, or an appliance or water supply on, Lessee will be responsible for any resulting fire or water damages.</u>  The cost to repair damages can be expensive.

*It pays to make sure all cigarettes and candles are out, and all appliances and faucets are in the off position, <u>before</u> you leave your apartment! And, <u>it always pays to have renter's insurance!</u>*

Lessee accepts responsibility for turning off all appliances and running water before leaving them unattended.  Lessee agrees to pay replacement cost for any damages that occur.

_____     _____
Lessee                              Lessee

_____     _____
Authorized Occupant                 Authorized Occupant

___4|13|12___   ___854-23___        _____
Date            Apt. No.            Agent for Lessor

APT - Responsibility for Appliances Agreement  4/12



## LEASE ADDENDUM ON MOISTURE, MOLD AND HOUSEKEEPING

Lessee hereby acknowledges certain specific responsibilities and does agree to be bound by the following:

1. MOISTURE ACCUMULATION: Lessee shall immediately remove any visible moisture accumulation in or on the Leased Premises, including on walls, windows, floors, ceilings, and bathroom fixtures; mop up spills and thoroughly dry affected areas immediately after any occurrence; use exhaust fans in kitchen and bathroom whenever necessary to remove moisture; and keep climate and moisture in the Leased Premises at reasonable levels so as to avoid moisture accumulation on any surfaces.

2. APARTMENT CLEANLINESS: Lessee shall clean and dust the Leased Premises regularly, and shall keep the Leased Premises, particularly kitchen and bath, clean, particularly all surfaces and walls exposed to moisture. **Lessee agrees not to use, or allow to be used, abrasive cleaners and/or bleach based products on countertops, sinks, tubs and appliances because they can cause damage.** Lessee shall vacuum and clean air-conditioning vents and ducts as part of regular housekeeping, and regularly change filters.

3. NOTIFICATION TO LESSOR: Lessee shall promptly notify Lessor in writing of the presence of any of the following conditions:
   a. Any water leak, evidence of water staining on walls or ceilings, the presence of excessive moisture, or standing water anywhere inside the Leased Premises;
   b. Any water leak, evidence of excessive moisture, or standing water in any community common areas;
   c. Mold growth in the Leased Premises that persists after Lessee has tried to remove it with an appropriate commercially available household cleaning solution, following the manufacturer's directions, all as part of Lessee's regular housecleaning of the Leased Premises;
   d. Any malfunction in any part of the heating, air-conditioning, or ventilating system and/or water heater/appliances located anywhere in the Leased Premises.

4. LIABILITY: Lessee shall assume all liability and be responsible to Lessor for all damages sustained to the Leased Premises or to any person or property claiming damage as a result of Lessee's failure to comply with the terms of this Addendum and Lessee waives any right to seek recovery or contribution from the Lessor where such damages are claimed to have been sustained in whole or in part from actions which violate the terms of this Addendum.

5. VIOLATION OF ADDENDUM: Violation of this Addendum shall be deemed a material violation under the terms of the Lease, and Lessor shall be entitled to exercise all rights and remedies it possesses against Lessee under the Lease, at law, or in equity.

6. ADDENDUM SUPERSEDES LEASE: In case of a conflict between the provisions of the Lease and any other provisions of the Lease, the provisions of this Addendum shall govern.

**Mold Disclosure: Lessor does not guarantee the premises are free of any toxic molds and/or fungi hazards. By execution of this lease agreement, Lessee agrees to indemnify, save and hold Lessor harmless from any liability whatsoever including but not limited to health conditions/illnesses, medical bills, attorney's fees, etc., should toxic mold and/or fungi hazards be found to be present. Lessee agrees to compensate Lessor for reasonable attorney's fees to defend any action brought against Lessor by Lessee regarding potential toxic mold liability. Should toxic mold and/or fungi hazards be found, via a state licensed inspector for mold and fungi hazards, Lessor and Lessee can cancel the lease agreement upon a 30 day written notice to vacate premises provided by either party. Lessor is not obligated to perform mold testing and may decline to do so, nor is Lessor liable for any testing performed by Lessee.**

_____          _____
Lessee                               Lessee

Authorized Occupant                  Authorized Occupant

4/13/16            854-23            _____
Date               Apt. No.          Agent for Lessor

APT - Lease Addendum on Moisture, Mold, and Housekeeping   6/15



## A NOTE ABOUT YOUR RENTER'S INSURANCE COVERAGE

**Renter's Insurance is not expensive!** *In real terms, renter's insurance can cost as little as a movie or one pizza a month!* The price can be as little as $18 or $30 a month, depending on the amount of coverage you choose.

**Renter's Insurance covers your personal property loss** due to fire or smoke, lightning, vandalism, theft, water escape from toilets or water heaters, frozen pipes, roof leaks, etc.

**Renter's Insurance also covers you for liability claims,** and can protect you in case of a liability lawsuit. For example, if a guest's or your negligence causes a fire or flooding, you will be held responsible for the damage to the property of others, including Lessor's property. Similarly, if a guest has an accident in your apartment, you may be personally liable for the guest's injuries.

**The Lessor does not carry insurance to cover you.** *Lessor's insurance policy only covers the dwelling - not your personal property or your liability.* It does not cover your belongings in case of loss, and it does not protect you if the negligence of someone in your apartment results in an injury or damage to the property of others, including Lessor's property. *Without liability coverage, your current and future earnings could be at risk!*

Did you know ...

Fire can ignite an entire building in 3 minutes!

Water can overflow and flood several apartments at once!

*Imagine what would happen if you, or someone in your apartment, fell asleep or left the apartment unattended -*

while a pot was sitting on a hot stove, a candle was burning,

a fire was smoldering in a fireplace, a lit cigarette set fire to a sofa or bed,

an iron or clothes dryer ignited clothing, a faucet was running in a sink or tub,

a dishwasher or washing machine leaked!

**It could take years for you to buy back lost belongings, and decades to pay** for the damages and legal costs that result from accidents like those listed above -

UNLESS

**You have renter's insurance!**

*If you do not already have renter's insurance, please consult with an insurance agent immediately. Lessor requires a minimum of $100,000 in Personal Liability coverage listing Tonti Management as an additional insured/interest, with a waiver of subrogation.*

APT - A Note About Your Renter's Insurance Coverage   4/12



## RENTERS INSURANCE ADDENDUM

According to the terms of the "Apartment Lease", Lessor's insurance policy does not cover Lessee's personal property or personal liability, and Lessor is not responsible for damages to Lessee's, Lessee's family's, guest's, agent's and/or Authorized Occupant(s)'s personal property and/or automobile(s).

Lessee understands and agrees that Lessee is liable for any fire, water, or other damage to the apartment community premises, including Lessee's apartment and all common areas, caused by the negligence, misuse, carelessness, omission or neglect of the Lessee, Lessee's family members, guests, agents, and/or Authorized Occupant(s).

Lessee has been advised and agrees to obtain renter's insurance upon move-in, containing a waiver of subrogation and maintain it throughout the entire lease term at Lessee's sole expense. The renter's insurance policy must be issued by a licensed insurance company of Lessee's choice, with limits of at least $100,000 in personal liability coverage listing Tonti Management as an additional insured/interest and enough personal property coverage to cover the replacement value of Lessee's property.

Lessee further, individually and on behalf of any insurance carrier providing the required coverage, waives any and all rights of subrogation against Lessor.

I (We) understand the need for renter's liability insurance as explained above and in the "Apartment Lease".

I (We) presently have renter's insurance. (Check one.) Yes ✓_____ No _____

Name of Insurance Company and Agent: _____

Policy Number(s): _____Premium_____

Expiration Date(s): _____

_____          _____
Lessee                                     Lessee

Authorized Occupant                        Authorized Occupant

__4 | 13 | 18__    __854 23__              _____
Date               Apt. No.                Agent for Lessor

APT - Renters Insurance Addendum  9/17



# EXTERMINATING SERVICES AGREEMENT

Professional exterminating services are provided to all apartments [*with the exception of bed bugs and fleas, see EXCLUSIONS below]. Anyone refusing entry to an apartment for scheduled exterminating services will be held responsible for the $20 fee per occurrence. Lessee is responsible for keeping household products on hand if needed for treatment in between visits.

The exterminating service technicians will be given the key and the alarm code to your apartment. Your apartment will be treated automatically. However, if you have an animal, you have the option to decline by initialing below.

\_\_\_\_\_ I (We) do not want to be included on the regularly scheduled exterminating list because I (we) have an animal.

## *EXCLUSIONS TO EXTERMINATING SERVICES

Lessee agrees to immediately notify Lessor if bedbugs or fleas are present in the apartment and permit treatment by Tonti Management's licensed professional exterminator at Lessee's expense to prevent spread of infestation. Lessor does not bear the costs for exterminating services for bed bug or flea infestations. If Lessee fails to immediately report or attempts to treat the insects and infestation spreads, Lessee agrees to pay for treatment for all affected units, including mattress/box spring/sofa encasements.

Lessee understands that bed bugs and fleas are brought into an apartment on bedding, furnishings and clothing by occupants or animals, and that Lessee will be responsible for the cost to exterminate them.

Charge per treatment to treat for bedbugs is as follows: Studio/1 Bedroom - $250, 2 Bedroom - $350 and 3 Bedroom - $450. Charge per treatment to treat for fleas is $75. Lessee will be given a list of instructions to prepare the apartment for treatment and agrees that if Lessee fails to prepare the apartment as instructed, they will pay a $150 travel charge and the expense for *two treatments*. All prices are subject to change.

Lessor requires and Lessee agrees to purchase mattress/box spring/sofa encasements from Tonti Management's licensed professional exterminator at the time of treatment.

## NAILS IN DOORS AGREEMENT

I (We) agree to use an over-the-door hanger to display any decorations on any door.

I (We) will not use nails in any door or any exterior wood.

If I (we) do use nails, I (we) agree to pay a fee of $50 plus cost of repair for each offense.

_____  
Lessee

_____  
Lessee

_____  
Authorized Occupant

_____  
Authorized Occupant

4|13|18          854-23  
Date                Apt. No.

_____  
Agent for Lessor

APT - Exterminating and Nails in doors agreement 1/16


**Tonti**
**MANAGEMENT**

## ADDING/ALTERING TELEPHONE, CABLE, COMPUTER LINES AND UNAUTHORIZED OCCUPANTS ADDENDUM

**According to the "Apartment Lease," In the section "Additions & Alterations," Lessee agrees not to make any additions or alterations to the premises without Lessor's written permission, and not to drill holes in the walls, woodwork or floors.** This agreement applies to adding or altering telephone, cable, fax, computer, or any other lines on the interior or exterior of the leased premises and/or building. Because of the number of lease violations, please sign and date below indicating your agreement to abide by the apartment lease and to pay an additional security deposit if permission is granted.

1.  I (We) agree to obtain written permission from Lessor before adding or altering any telephone, cable, fax, computer or other lines on the interior or exterior of the building and to pay an additional $100 as security deposit to protect against possible repair costs or damages. .
2.  I (We) agree to pay an additional $100 as security deposit plus a $50 fine per occurance if I (we) alter or add telephone, cable, fax, computer, or any other lines on the interior or exterior of the leased premises and/or building without prior written permission.

## UNAUTHORIZED OCCUPANTS PROHIBITED

**Per the terms of the lease, Lessee understands and agrees that any person who inhabits or intends to inhabit the property for more than 7 days, full or partial, during the term of the lease shall be considered an AUTHORIZED OCCUPANT and is required to apply and be pre-approved.** Tonti Management is under no obligation to approve an additional authorized occupant and may decline to do so. Failure to obtain prior pre-authorization, in writing, for anyone who would inhabit the property for more than 7 days, full or partial, will result in:

1.  A fine of $500, whether or not Tonti Management agrees to approve an additional occupant/leaseholder.
2.  Termination of lease by Tonti Management if it declines to approve an unauthorized occupant who does not vacate the premises immediately or the penalty listed above is not paid immediately when billed.
3.  If an additional authorized occupant is approved, additional deposits apply.
4.  I (We) agree to allow Tonti Management permission to enter my apartment without prior notice to investigate and/or document a reported or suspected unauthorized occupant.

_____          _____
Lessee                                    Lessee


_____          _____
Authorized Occupant                       Authorized Occupant

___4/13/18___      ___8543___             _____
Date               Apt. No.               Agent for Lessor

APT - Adding/Altering Lines Addendum 12/17



# NON-SMOKING ADDENDUM

1) I (We) _____ do not smoke.

**I (We) acknowledge that this apartment is designated non-smoking.** Smoking is not permitted in the building, apartment or pool area by Lessee, his family, guests, agents or Authorized Occupant(s) at any time. Smoking is limited to my apartment's porch, patio or balcony.

I (We) understand that there may be some residents in the building that rented prior to May 1, 2017. These residents are being asked to discontinue smoking in their apartments but may fail to do so and are not necessarily prohibited from doing so under the terms of their existing lease. Tonti does not warrant or represent that the entire building, your apartment and/or any common areas will be smoke-free and/or free of residual and/or second-hand smoke. As existing residents move out, the apartments in this building will be leased as non-smoking units.

2) I (We) _____ do smoke.

**I (We) acknowledge that this apartment is designated non-smoking.** Smoking is not permitted in the building, apartment or pool area by Lessee, his family, guests, agents or Authorized Occupant(s) at any time. Smoking is limited to my apartment's porch, patio or balcony.

I (We) understand that there may be some residents in the building that rented prior to May 1, 2017. These residents are being asked to discontinue smoking in their apartments but may fail to do so and are not necessarily prohibited from doing so under the terms of their existing lease. Tonti does not warrant or represent that the entire building, your apartment and/or any common areas will be smoke-free and/or free of residual and/or second-hand smoke. As existing residents move out, the apartments in this building will be leased as non-smoking units.

3) I (We) agree to pay the following fines per occurrence if Lessee, his family, guests, agents or Authorized Occupant(s) smoke:  a.) $500 if inside my apartment and/or b.) $250 if in the building, interior/covered stairwells or walkways, laundry rooms or pool area. I am fully responsible for myself, authorized occupants and guests.

4. I (We) understand that if Lessee, his family, guests, agents or Authorized Occupant(s) (a) discard cigarette butts anywhere on the property, including my porch, patio or balcony or (b) fail to fully extinguish and dispose of cigarettes in a proper receptacle, I (We) agree to pay a fine of $50 per occurrence.

_____        _____
Lessee                                   Lessee


_____        _____
Authorized Occupant                      Authorized Occupant

4/13/18        854-23                     _____
Date           Apt. No.                   Agent for Lessor

APT - Non-Smoking Addendum - New MI 5-1-17    10/17

**onti** **MANAGEMENT**

## COMMON ENTRY DOOR/GATE/POOL KEYS RECEIPT

Date: **04/13/18**

I (We) acknowledge receipt for the following key(s) to the **Sunlake Apts** Apartments.

I, (We) **DORY TURNIPSEED**, of apartment # **854-23** have paid an additional security deposit of $25 for each common entry door/gate/pool key received and listed below. As an additional security deposit, it is subject to all terms and conditions as stated in the apartment lease regarding security deposits.

I (We) understand that the key(s) must be surrendered to Lessor upon vacating the premises. If I fail to fulfill all terms of my lease and any lease addendum, fail to return the key(s) upon move-out, and/or owe Lessor money, I acknowledge this will result in the forfeiture of this additional security deposit. If a key is lost, there will be an additional $50 per key charge for the first replacement, and a $100 per key charge for the second replacement.

It is understood there will be a $50 per key charge for keys not returned at move out.

I understand that my key(s) is for my use only. I agree not to allow it to be used by anyone other than myself. Keys will only be issued to Lessee(s) and Authorized Occupant(s).

I have read the above and agree to the terms therein. Number of keys issued:

Common Entry door _____     Key #'s _____

Gate _____     Key #'s _____

Pool/Laundry _____     Key #'s _____

Amount of Additional Security Deposit received -- _____

Lessee _____

Lessee _____

Authorized Occupant _____

Authorized Occupant _____

Agent for Lessor _____ Date 4/13/18

APT - Keys Receipt 3/18



# SECURITY DEPOSIT RECEIPT
## THIS IS NOT A RENTAL RECEIPT

DATE: 4/4/18 ADDITIONAL DEPOSIT
Received From **DORY TURNIPSEED**       $ 225.00
( ) Cash ( ) Check ( ) M.O. as Security Deposit for The <u>Sunlake Apts</u> Apartments

<u>854-23</u> at __ City of Kenner, LA   70065

In the event this application is approved and the applicant fails or refuses to enter into the contemplated lease, owner shall retain the said deposit to cover the cost of taking and processing this application and removing the premises from the market and holding same for applicant. If applicant withdraws his application or notifies owner that he has changed his mind about taking the dwelling unit, the deposit will be retained by owner. In the event this application is disapproved, or for any other reason for which the owner is responsible the Lease Agreement is not consummated, this deposit will be returned to applicant.

**YOUR KEYS WILL BE ISSUED WHEN:**

1. All parties have signed the lease and all applicable addenda.
2. All deposits and rents have been paid.
3. The move in date has arrived.
4. Electricity has been turned on in resident's name.
5. Proof of renter's insurance is provided.

**RELEASE OF THE SECURITY DEPOSIT IS SUBJECT TO THE FOLLOWING PROVISIONS:**

1. Full term of Lease has expired. This lease may not be cancelled <u>*for any reason whatsoever.*</u>
2. Forwarding address and 30 days written notice was given prior to leaving apartment.
   Physical forwarding address required, post office boxes not accepted.
3. No damage to property beyond normal wear and tear.
4. No damage to carpet beyond normal wear and tear.
5. No unpaid amounts owed to Lessor.
6. All keys are returned.
7. All debris and rubbish and discards placed in proper trash containers.
8. All terms of the lease are complied with.

**If applicant fails to sign the lease this deposit shall be forfeited to Tonti Management. Otherwise deposit shall thereafter become security for the full and faithful performance of all the terms and conditions of the lease.**

**Deposit refund form will be mailed within 30 days after keys are returned and Lessor inspects the premises.**

**Tonti Management is not responsible for articles left in vacated apartments.**

Undersigned applicant(s) agree that this security deposit may not be applied as rent, and that the full monthly rent will be paid on or before the .
first day of every month including the last month of occupancy.

_____
Applicant

APP - Security Deposit Receipt   4/12

Applicant _____

Agent for Lessor _____

 **MANAGEMENT**

# SECURITY DEPOSIT RECEIPT
## THIS IS NOT A RENTAL RECEIPT

DATE: 3/30/18

Received From __DORY TURNIPSEED__      $ 350.00 Dollars

( ) Cash  (X ) Check  ( ) M.O.  as Security Deposit for The __Sunlake Apts__ Apartments

__854-23__ at ___ City of Kenner, LA   70065

In the event this application is approved and the applicant fails or refuses to enter into the contemplated lease, owner shall retain the said deposit to cover the cost of taking and processing this application and removing the premises from the market and holding same for applicant. If applicant withdraws his application or notifies owner that he has changed his mind about taking the dwelling unit, the deposit will be retained by owner. In the event this application is disapproved, or for any other reason for which the owner is responsible the Lease Agreement is not consummated, this deposit will be returned to applicant.

**YOUR KEYS WILL BE ISSUED WHEN:**

1. All parties have signed the lease and all applicable addenda.
2. All deposits and rents have been paid.
3. The move in date has arrived.
4. Electricity has been turned on in resident's name.
5. Proof of renter's insurance is provided.

**RELEASE OF THE SECURITY DEPOSIT IS SUBJECT TO THE FOLLOWING PROVISIONS:**

1. Full term of Lease has expired.  This lease may not be cancelled *for any reason whatsoever.*
2. Forwarding address and 30 days written notice was given prior to leaving apartment. Physical forwarding address required, post office boxes not accepted.
3. No damage to property beyond normal wear and tear.
4. No damage to carpet beyond normal wear and tear.
5. No unpaid amounts owed to Lessor.
6. All keys are returned.
7. All debris and rubbish and discards placed in proper trash containers.
8. All terms of the lease are complied with.

**If applicant fails to sign the lease this deposit shall be forfeited to Tonti Management. Otherwise deposit shall thereafter become security for the full and faithful performance of all the terms and conditions of the lease.**

**Deposit refund form will be mailed within 30 days after keys are returned and Lessor inspects the premises.**

**Tonti Management is not responsible for articles left in vacated apartments.**

Undersigned applicant(s) agree that this security deposit may not be applied as rent, and that the full monthly rent will be paid on or before the first day of every month including the last month of occupancy.

_____
Applicant

APP - Security Deposit Receipt   4/12        Agent for Lessor _____
Applicant



## ASSUMPTION OF RESPONSIBILITY FOR CONDITION OF PREMISES

Lessee assumes full responsibility and liability for the condition of the Premises, as defined on page one of this Apartment Lease, including without limitation all liability assumable by a tenant under Louisiana Revised Statute § 9:3221.

Lessee agrees that Lessor and the owner (hereinafter collectively referred to as Lessor) of the leased premises will not be liable to Lessee, or to anyone on the Premises who derives his or her right to be on the Premises from Lessee, for any injury caused by or damages resulting from any defect or condition in the Premises, unless Lessee had notified Lessor of said defect or condition, in writing, and Lessor failed to remedy such defect or condition within a reasonable time after such written notice. Absent such notice, Lessee hereby assumes responsibility and liability for any damage or injury to Lessor, Lessee, or any other persons or property resulting from any such defect or condition.

This assumption of responsibility and liability by Lessee includes without limitation, and Lessor will not be responsible for, all damage to any property or persons caused by fire, smoke damage, theft, vandalism, leaks in the roof, water, bursting of pipes resulting from a freeze or otherwise, frost, weather, steam, sewage, electricity, sewer gas or odors, or by the bursting or leaking of pipes, toilets, water heaters, or plumbing work, and applies equally whether such damage be caused by the act or neglect of any third party.

By agreeing to this Assumption of Responsibility, Lessee legally absolves Lessor of responsibility and liability for any damage or injury to Lessee or any other persons or property resulting from any defect or condition in the Premises. Lessee acknowledges that the Renters Insurance Addendum to this Apartment Lease requires Lessee to obtain renter's insurance upon move-in, to cover such damages if they occur, with limits of at least $100,000 in personal liability coverage and enough personal property coverage to cover the replacement value of Lessee's property.

**By signing below, Lessee and Authorized Occupant(s) acknowledge that this assumption of responsibility for condition of the Premises has been called to his/her/its attention, that this assumption of liability for responsibility of the Premises is essential to this lease, and that Lessor would not have entered into this lease without Lessee agreeing to this assumption of responsibility in accordance with Louisiana Revised Statute § 9:3221.**

_____          _____
Lessee                                            Lessee

_____          _____
Authorized Occupant                               Authorized Occupant

4|13|18        554-28                      _____
Date           Apt. No.                    Agent for Lessor

APT – Assumption of Responsibility for Condition of Premises  4/12



## WAIVER OF WARRANTIES

Lessee accepts the Premises, as defined on page one of this Apartment Lease, in its present condition.

Lessee individually and on behalf of all persons who reside in the leased premises as more fully described in the lease expressly waives all warranties provided by the Louisiana Civil Code, including but not limited to:

*   the warranties provided by Louisiana Civil Code articles 2696 providing that the leased premises is suitable for the use intended by the Lessee and that leased premises contains no vices or defects that prevent lessee from using the premises for Lessee(s) intended purpose, the above Civil Code article 2696 also provides that the warranty (which is hereby waived) also extends to vices or defects arising after the delivery of the leased premises to the Lessee;

· * the warranties provided by Louisiana Civil Code article 2697 provides that the vices and defect(s) need not be known to the lessor.

By agreeing to this Waiver, Lessee, Lessee's family, guests, agents and Authorized Occupant(s) legally absolves Lessor of responsibility and liability for damages to Lessee, Lessee's family, guests, agents and Authorized Occupant(s) or Lessee's, Lessee's family, guest's, agents's and Authorized Occupant(s)'s property resulting from defects in the Premises. Lessee acknowledges that the Renters Insurance Addendum to this Apartment Lease requires Lessee to obtain renter's insurance upon move-in, to cover such damages if they occur, with limits of at least $100,000 in personal liability coverage and enough personal property coverage to cover the replacement value of Lessee's property.

**By signing below, Lessee and Authorized Occupant(s) acknowledge that this waiver of warranties has been called to his/her attention, that this waiver of warranties is essential to this lease, and that Lessor would not have entered into this lease without Lessee agreeing to this waiver.**

_____
Lessee

_____
Lessee

_____
Authorized Occupant

_____
Authorized Occupant

4/3/18          854-23
Date            Apt. No.

_____
Agent for Lessor

APT – Waiver of Warranties 4/12


**Tonti** MANAGEMENT

# ARBITRATION

## Please Read Carefully

A: Except as noted in paragraph C, any and all claims between the parties for liability, personal injury or illness damages, property damages, or expenses arising out of, relating to, or in connection with the lease, the occupancy of the premises, including any and all warranties (including but not limited to warranties imposed by Louisiana laws, statutes or regulations), representations, or agreements relating thereto, as well as any disputes, claims or controversies regarding the scope, validity and/or enforceability of this Arbitration Agreement, shall be resolved through binding arbitration in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and the procedural rules of arbitration published by Mediation Arbitration Professional Systems, Inc. (MAPS' Rules of Arbitration). It is the intent of the parties to commit to an arbitration of any and all personal injury claims or property damage claims wherein a claim is made for an amount in excess of $2,500.00 as is more fully explained in paragraph C. It is also the intent of the parties to commit to an arbitration of any disputes, claims or controversies regarding the scope, validity and/or enforceability of this Arbitration Agreement. Lessor, as defined in the lease hereby advises the Lessee and any other signatory to the lease, of the desirability of seeking and is hereby given a reasonable opportunity to seek the advice of independent legal counsel prior to signing the lease and all addenda thereto, including this agreement to arbitrate.

B: The arbitration shall be conducted by a single arbitrator at the offices of MAPS in Jefferson Parish, Louisiana. Notwithstanding the outcome of the dispute each party shall be responsible for his/her/its own deposits, costs, fees (including but not limited to attorney's fees) and expenses associated with the arbitration, and any action to confirm or contest the award. Judgment on the award rendered by the arbitrator may be rendered in any court having jurisdiction thereof. In the event Lessor or Lessee fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, and in addition to any other attorney's fees provisions herein, the other party shall be entitled to all costs of said suit or enforcement, including reasonable attorneys' fees for having to compel arbitration or defend or enforce the award.

C: Any dispute, claim or controversy with a value of $2,500.00 or less arising out of the Lease and all addenda thereto, including but not limited to claims for eviction, payment of rent and/or damage to person or property, Lessor and Lessee hereby agree to waive their right to demand arbitration and, instead, agree to litigate and/or resolve the dispute, claim, or controversy in the Justice of the Peace Court of competent jurisdiction and venue.

| | |
|---|---|
| _____ | _____ |
| Lessee | Lessee |

| | | |
|---|---|---|
| _____ | | _____ |
| Authorized Occupant | | Authorized Occupant |
| 4\|13\|18 | 854-23 | _____ |
| Date | Apt. No. | Agent for Lessor |

APT - Arbitration 4/12



# A NOTE ABOUT YOUR RESPONSIBILITY FOR ANIMALS

Our largest expense item is repair and replacement of carpet and other property due to damages from animals. Therefore, we take great care to communicate to our residents the seriousness of their financial and legal responsibility in choosing to bring an animal onto the property.

You are moving into a clean apartment. You have the duty to notify Lessor in writing if you now have an animal, acquire an animal in the future, or have an animal on the property at any time, whether you own the animal or not. Please carefully read and review the Animal Disclosure and Animal Lease Addendum that you signed. It is a legally binding document that will be enforced.

Animals must be properly cared for and controlled at all times. If not, animals can disturb the rights of others and cause damage to property running into many hundreds of dollars. Should any animal in your care cause any damage to the premises, the common areas, or the property of another resident, you will be held liable for the full replacement cost of any damaged items.

Our Lessees are very important to us. We want to make sure there are no surprises when it comes to animals or "visiting" animals. We want your stay, and the stay of all our residents, to be as pleasant and comfortable as possible.

APT - A Note About Your Responsibility for Animals  1/18



# CARPET CARE

We would like to take the opportunity to give you some helpful care tips on maintaining your carpet. These tips can help protect your Security Deposit as well as the carpet.

1) *Vacuum the carpet regularly.* This takes the dirt out and helps the carpet keep its lift.

2) *When a stain first occurs, lift the stain immediately with straight water.* Always use a clean damp cloth, blot the stain, but DO NOT RUB! Rubbing will only set the stain in deeper, and it will be harder to get out after it has dried. Remember, some chemicals will fade or bleach the carpet.

3) *Place a doormat inside your apartment to wipe your shoes on as you enter.* We recommend you then remove your shoes and either place them on the tile/vinyl at the entryway or carry them to where you would normally store them. Most stains are brought in on shoes.

4) If you have any questions concerning your carpet or any other maintenance, call the management office; they will be able to address the problem.

TAKING CARE OF THE CARPET WILL HELP PROTECT YOUR SECURITY DEPOSIT

If there are damages beyond normal wear and tear, your security deposit may not cover the amount needed to repair or replace the carpet. Damages include stains, burns, bleach spots, animal urine or anything else that would necessitate repairs to the carpet or replacement of the entire carpet. Lessee understands and agrees that Lessee will be responsible *for full replacement cost, without benefit of depreciation,* for any flooring requiring replacement due to Lessee's actions, responsibilities, or negligence.

_____        _____
Lessee                                                    Lessee

_____        _____
Authorized Occupant                              Authorized Occupant

4|3|10          864-23
Date            Apt. No.                 Agent for Lessor

APT – Carpet Care 1/18



## SATELLITE DISH AND ANTENNA ADDENDUM

Under a Federal Communications Commission order, Lessee has a limited right to install a satellite dish or receiving antenna on the leased premises. Lessor is allowed to impose reasonable restrictions relating to such installation. Lessee is required to comply with these restrictions as a condition of installing such equipment. This addendum contains the restrictions that Lessee and Lessor agree to follow.

**Number and size.** Lessee may install only one satellite dish or receiving antenna on the leased premises. A satellite dish may not exceed one meter (3.3 feet) in diameter. An antenna may receive but not transmit signals.

**Location.** Location of the satellite dish or antenna is limited to (1) inside the dwelling, or (2) in an area outside the dwelling such as a balcony, patio, yard, etc. of which Lessee has exclusive use. *Installation is not permitted on any parking area, roof, exterior wall, window, windowsill, fence or common area, or in an area that other residents are allowed to use.* A satellite dish or antenna may not protrude beyond the vertical and horizontal space that is leased to Lessee for his/hers/its exclusive use.

**Safety and non-interference.** Lessees installation: (1) must comply with reasonable safety standards; (2) may not interfere with Lessors cable, telephone or electrical systems or those of neighboring properties; (3) may not be connected to Lessors telecommunication systems; and (4) may not be connected to Lessors electrical system except by plugging into a 110-volt duplex receptacle. If the satellite dish or antenna is placed in a permitted outside area, it must be safely secured by securely attaching it to a portable, heavy object such as a small slab of concrete, or any other method approved by Lessor in writing. It can be free standing in a confined space such as a balcony or patio, but it **cannot be attached by clamping or by any other means to the balcony or patio railing.** Lessor may require reasonable screening of the satellite dish or antenna by plants, etc., so long as it does not impair reception.

**Signal transmission from exterior dish or antenna to interior of dwelling.** Under the FCC order, Lessee may not damage or alter the leased premises and may not drill holes through walls, door jams, window sills, roofs, balcony railings, or glass, etc. If Lessee's satellite dish or antenna is located outside the dwelling (on balcony, patio, etc.) the signals received by it may be transmitted to the interior of the dwelling only by the following methods: (1) running a "flat" cable under a door jam or window sill in a manner that does not physically alter the premises and does not interfere with proper operation of the door or window; (2) running a traditional or flat cable through a pre-existing hole in the wall (that will not need to be enlarged to accommodate the cable); (3) connecting cables "through a window pane" similar to how an external car antenna for a cellular phone can be connected to inside wiring by a device glued to either side of the window without drilling a hole through the window; (4) wireless transmission of the signal from the satellite dish or antenna to a device inside the dwelling; or (5) any other method approved by Lessor in writing.

**Workmanship.** In order to assu   safety, the strength and type of me   .ials used for installation must be approved by Lessor in writing. Installation must be done by qualified person or company approved by Lessor in writing.

**Maintenance.** Lessee will have the sole responsibility for maintaining the satellite dish, antenna and all related equipment.

**Removal and damages.** Lessee must remove the satellite dish or antenna and other related equipment when Lessee moves out of the dwelling. Lessee must pay for any damages and for the cost of repairs or repainting which may be reasonably necessary to restore the leased premises to its condition prior to the installation of a satellite dish, antenna or related equipment.

**Liability insurance and indemnity.** Lessee must take full responsibility for the satellite dish or antenna and must provide Lessor with evidence of personal liability insurance to protect Lessor against claims of personal injury and property damage to others, relating to the satellite dish or antenna. The personal liability insurance coverage must be $100,000 per occurence. Lessee agrees to hold Lessor harmless, indemnify and defend Lessor against any of the above claims by others whether caused in whole or in part by Lessor as defined in the "Apartment Lease". Lessee's insurance must contain a waiver of subrogation , listing Tonti Management as an additional insured, and maintain it throughout the entire lease term.

**Security deposit increase.** Lessee's security deposit (in "Security Deposit" section of the "Apartment Lease") is increased by an additional sum of $ 100.00  in order to help protect Lessor against possible repair costs, damages, or failure to remove at time of move-out. This security deposit does not imply a right to drill or otherwise alter the leased premises. This additional security deposit is subject to the same terms and conditions as the apartment security deposit.

**I, (We)** _____   do not currently have a satellite dish or antenna. If I (we) plan to install one, I (we) agree to notify Lessor in writing and obtain written permission 72 hours prior to installation. I (We) understand installation of the satellite dish or antenna may begin only after I (we) have: (1) signed a new Satellite Dish and Antenna Addendum; (2) provided evidence of the required personal liability insurance; (3) paid the additional security deposit listed above; and (4) received Lessor's written approval of the person or company who will do the installation. *If I (we) install a satellite dish or antenna without obtaining prior written approval from Lessor, I (we) agree to pay a sum equal to two (2) times the additional security deposit listed above upon demand by Lessor.*

**I, (We)** _____   have a satellite dish or antenna. I understand I (we) may start installation of the satellite dish or antenna only after I (we) have: (1) signed this addendum; (2) provided evidence of the required personal liability insurance; (3) paid the additional security deposit listed above; and (4) received Lessor's written permission and approval of the person or company who will do the installation.

_____        _____
Lessee                                 Lessee

_____        _____
Authorized Occupant                    Authorized Occupant

  4|13|18          854-23               _____
Date              Apt. No.             Agent for Lessor

APT - Satellite Dish and Antenna Addendum   4/12          2



# COMMUNITY POLICIES

**1) Service Fees\*\***: Lessor charges a $75 after-hour lockout fee plus a minimum charge of $55 to replace broken locks or windows. If Lessee calls for maintenance then refuses entrance to the premises, Lessee agrees to pay $50 for maintenance to return plus any damages. If plumbing stop-ups are caused by the insertion of improper articles therein, including but not limited to cloth items, baby wipes or diapers, flushable wipes, feminine products, seafood shells, rice, grease, too much food or any foreign objects, a minimum trip fee of $50 plus charges will be charged for unclogging plumbing equipment. **\*\*Fees subject to change to reflect the charges at the time penalty is incurred.**

**2) Vehicle Rules:** All vehicles must be parked in areas provided for that purpose. Vehicles must not be parked over curbs or on grass. Guests must not park in Lessee's designated parking space. Motorcycles are to be parked in parking lot only, not in breezeways, stairwells, balconies or patios. This practice is a fire hazard. Washing and repairing vehicles on the property is not permitted. After vehicle has been tagged by management, vehicles that are in wrecked condition, have one or more flat tires, have expired or no brake tag or license plate, are parked for prolonged periods of time or parked with "For Sale" signs, will be towed away within 24 hours at the Lessee/Owner's expense, and/or Lessor will ask for return of premises.

**3) Animals:** Animals are not allowed on the premises without prior written permission of the Lessor. (See Apartment Lease and Animal Disclosure and Animal Lease Addendum).

**4) Interiors:** Small pictures and plaques may be hung **inside** apartment, using only finishing nails or tacks, however, lessee agrees to pay $3.25 per small hole at move out. Bolts, screws, togglers, anchors or other hardware used to hang heavier objects including but not limited to televison sets, electronics, heavy pictures, etc. are prohibited. Nails are prohibited in any door or any exterior wood; a $50 fee plus cost of repair will apply for each offense. Only over-the-door hangers on entrance doors are allowed to display decorations. Non-slip decals in bathtubs are not permitted. Waterbeds are not permitted. Lessee agrees not to use or allow to be used abrasive cleaners and/or bleach based products on countertops, sinks, tubs and appliances because they can cause damage. Lessee agrees to protect countertops and use cutting boards at all times.

**5) Windows:** Blinds are provided. Any window coverings must have solid white backings. Foil is not permitted in windows. Rain or other water will damage floors. Do not leave windows open when you leave your apartment. Remove masking tape (hurricane tape) from windows immediately after danger ceases.

**6) Electrical fuses** are provided by the management. No others should be used. Any breach of this regulation may subject Lessee to prosecution by state and city authorities for violation of fire prevention statutes or other laws and regulations. If any electrical appliance requires special circuits, such electrical circuits must be installed by a certified electrician at Lessee's expense and only after written permission from the Lessor is obtained.

**7) Exteriors:** Lessor prohibits anything, such as signs or other advertising, to be placed on the **outside** of the building, in windows or on doors. Holiday decorations must be removed by Lessee from all windows, doors or other exterior perimeters within 7 days following the holiday.

**8) Fire risk:** Lessees must not do or permit anything to increase the **fire risk** of the premises. *Plug-in air fresheners, portable generators, space heaters and stove top deep frying are prohibited.*Lessees must not bring or keep anything therein which will in any way obstruct or interfere with the rights of, injure or annoy, any other Lessee or conflict with any of the rules and ordinances of the board of health or any other regulatory agency. *In the event of a power outage, Lessee agrees to use only battery powered devices in place of electrical power.*

**9) Barbecue Pits, Flammable Materials and Electric Grills:** Due to Fire Code, the storage or use of any type of barbecue pits or any type of combustible or flammable materials on patios, balconies or in apartments is strictly prohibited. Cooking on any type of grill or electric appliance on patios and balconies is strictly prohibited. Barbecue pits have been placed around the pool(s) at <u>some</u> communities. Barbecue pits must be attended to at all times when in use.

**10) Appropriate patio and balcony Ite   .:** Lessees are responsible for maintaining   .ir balconies/patios in a neat manner and clean of debris and household items. Appropriate items include potted plants (living) in saucers, well-maintained patio furniture, well-maintained bicycles. Inappropriate items include empty plant pots, birdfeeders, household furniture, mops, brooms, trash, trash containers, laundry. We prohibit installation of shades, screens, lattice, awnings, etc. Do not sweep or throw dirt, cigarette butts or any substance from your balcony. Animals are not permitted unattended or to defecate or urinate on a patio or balcony.

**11) Recreational equipment:** Skateboards, Scooters and Big Wheels are not to be used on the premises. Recreational equipment and all other toys must be stored within the apartment when not in use. Portable basketball goals and other recreational equipment are prohibited.

**12) Garage or yard sales are prohibited.**

**13) Disturbances:** Please consider the other Lessees of your community. **Do not disturb or annoy** others with loud or untimely noise or interference of any other kind. Lessor does not permit parties, or loud music or television. Lessor does not permit loitering, ball playing, etc. in parking lots, courtyards, and other common areas.
Treadmills and vibrating exercise equipment are not allowed on 2nd and 3rd floors. If acquired after move in, they will have to be removed.

**14) Swimming Pool and Tennis Court Rules:** Rules and hours are posted in the pool and tennis court areas and will be enforced year round. A breach of any of these rules will result in a $50 fine per occurence and/or will be justification for the Lessor to void this lease. Lessor reserves the right to refuse entry or privilege to anyone, including Lessee, occupants and guest(s), and to close the recreational facility at any time deemed necessary. Unauthorized people in the pool or on the premises should be reported to the rental office during office hours and the police department after office hours. **In case of emergency, Dial 911.**
* Pool and tennis courts are for Lessees' use only. Lessees are allowed only two (2) guests per unit to use the pool or tennis court at any one time.
* All occupants and guests must be accompanied by a leaseholder at all times and leaseholder must have a facility pass with them.
* Management reserves the right to determine if swimwear and tennis attire are appropriate. We do not allow cut-offs or thong bikinis (Pool). Tennis shoes are required (Tennis courts).
* Lessor prohibits the following in and around recreational facilities: animals, smoking, alcohol, gum, personal barbecue pits, glassware or other hazardous breakable material; parties; profanity, obscene language or actions; running, ball playing, splashing, diving or boisterous conduct at the pool; anything other than the game of tennis on the tennis courts.
* Lessor requires the following in and around recreational facilities: proper swim and tennis attire and shoes; trash placed in containers provided (no food); all belongings and food items removed on departure. You are welcome to bring music to the pool as long as you use headphones.
* Keep gates closed at all times. Do not prop gates open. Do not provide access to the pools, tennis courts or other recreational areas to others. Lighting is not provided. Therefore, all recreational areas are only open at 9 am and are closed at dusk.
* Pool: **No Life Guard on Duty -- Swim at Your Own Risk.** Unattended, solo swimming prohibited. Please close pool umbrellas when leaving the pool area. If left open, wind will damage them and they will not be available for everyone's use. **Safety devices:** White life rings and rescue poles are *not* for play. They must remain hanging on the fence at all times and used for rescue only. Daylight hours only -- Open 9 am to dusk.
* Tennis: Time limit of one set or 30 minutes when people are waiting to play. Doubles have priority on all courts when people are waiting to play. Daylight hours only -- Open 7 am to dusk.

**15) Parish curfew hours for minors under the age of 17 years:** Monday - Thursday 11 p.m. to 5 a.m. Friday - Sunday 12 a.m. to 5 a.m. No one is allowed to loiter in the common areas.

**16) Lessee responsibilities:** Lessees are reminded that they are responsible for the acts of their occupants and/or guest(s). Damage to Lessor's property by Lessee, Lessee's occupants or guest(s) is the financial responsibility of the Lessee. Lessees witnessing any acts of vandalism should immediately call 911 and then report it to the rental office.

**17) Exterminating Services:** Professional exterminating services are provided to all apartments [with the exception of bed bugs and fleas, see "Exterminating Services Agreement"]. Anyone refusing entry to an apartment for scheduled exterminating services will be held responsible for the $20 fee per occurrence. The exterminating service technicians are given the key and the alarm code to the apartment and apartments are treated automatically. However, if Lessee has an animal, they have the option to decline.

Lessee agrees to immediately notify Lessor if bedbugs or fleas are present in the apartment and permit treatment by Tonti Management's licensed professional exterminator at Lessee's expense to prevent spread of infestation. Lessor does not bear the costs for exterminating services for bed bug or flea infestations. If Lessee fails to immediately report or attempts to treat the insects and infestation spreads, Lessee agrees to pay for treatment for all affected units, including mattress/box spring/sofa encasements.

Lessee understands that bed bugs and fleas are brought into an apartment on bedding, furnishings and clothing by occupants or animals, and that Lessee will be responsible for the cost to exterminate them.

Charge per treatment to treat for bedbugs is as follows: Studio/1 Bedroom - $250, 2 Bedroom - $350 and 3 Bedroom - $450. Charge per treatment to treat for fleas is $75. Lessee will be given a list of instructions to prepare the apartment for treatment and agrees that if Lessee fails to prepare the apartment as instructed, they will pay a $150 travel charge and the expense for *two treatments*. All prices are subject to change.

Lessor requires and Lessee agrees to purchase mattress/box spring/sofa encasements from Tonti Management's licensed professional exterminator at the time of treatment.

**18) Refrigerator:** Lessee acknowledges that the apartment includes a refrigerator that is in good working order and has been cleaned prior to Lessee's occupancy. Lessee acknowledges that he is obliged to clean the refrigerator periodically and at the termination of the Lease. In the event of evacuation or power failure, Lessee agrees to take all reasonable steps necessary to protect the refrigerator from damage, including but not limited to, removing any perishable foods or products which might deteriorate and spoil, shutting off the breaker, cleaning and propping the door open to dry. Should Lessee fail to take these reasonable steps to avoid damages, contamination or destruction to the refrigerator caused by moisture or the deterioration and spoilage of foods or products, Lessee shall be further obligated to reimburse Lessor for the full replacement cost of the refrigerator and all associated costs.

**19) Alarms, Detectors and Fire Extinguishers.** Lessee agrees to:
1. Test smoke alarms and hot water heater/AC water detectors monthly.
2. Change batteries in the above items when needed -- no less than every six months.
3. Check fire extinguishers and test carbon monoxide detectors (if applicable) monthly and bring to the rental office if replacement is necessary.

**20) Mold Disclosure:** Lessor does not guarantee the premises are free of any toxic molds and/or fungi hazards. By execution of this lease agreement, Lessee agrees to indemnify, save and hold Lessor harmless from any liability whatsoever including but not limited to health conditions/illnesses, medical bills, attorney's fees, etc., should toxic mold and/or fungi hazards be found to be present. Lessee agrees to compensate Lessor for reasonable attorney's fees to defend any action brought against Lessor by Lessee regarding potential toxic mold liability. Should toxic mold and/or fungi hazards be found; via a state licensed inspector for mold and fungi hazards, Lessor and Lessee can cancel the lease agreement upon a 30 day written notice to vacate premises provided by either party. Lessor is not obligated to perform mold testing and may decline to do so, nor is Lessor liable for any testing performed by Lessee.

**21)** Lessee hereby agrees to fully cooperate with Lessor, or anyone acting on Lessor's behalf, to collect any rent, deposit · or other payments Lessee makes with a check, money order, cashier's check or other negotiable instrument that is lost, stolen, or otherwise missing or misappropriated. Lessee's failure to provide their immediate, full and unconditional cooperation will result in a material breach and default of this lease, resulting in full acceleration of the lease and/or eviction. Money orders, cashier's checks and/or cash may not be placed in the drop box.

**22) Unauthorized Occupants:** Per the terms of the lease, Lessee understands and agrees that any person who inhabits or intends to inhabit the property for more than 7 days, full or partial, during the term of the lease shall be considered an AUTHORIZED OCCUPANT and is required to apply and be *pre-approved.* Tonti Management is under no obligation to approve an additional authorized occupant and may decline to do so. Failure to obtain prior pre-authorization, in writing, for anyone who would inhabit the property for more than 7 days, full or partial, will result in:

1. A fine of $500, whether or not Tonti Management agrees to approve an additional occupant/leaseholder.
2. Termination of lease by Tonti Management if it declines to approve an unauthorized occupant who does not vacate the premises immediately or the penalty listed above is not paid immediately when billed.
3. If an additional authorized occupant is approved, additional deposits apply.

**23) Access:** Lessor or his agents or employees shall have the right to enter the premises to make repairs necessary for the preservation of the premises without giving prior notice to the Lessee. Lessee shall also give Lessor access to the premises without notice at reasonable intervals between the hours of 8:30 AM TO 6:00 PM for the purpose of responding to repair requests, making repairs or replacements, estimating repair costs, performing pest control, conducting preventative maintenance, conducting inspections or investigations for reported or reasonably suspected lease violations or resident complaints including but not limited to unauthorized occupants, animals, illegal activity, removing unauthorized devices or window coverings, to allow person(s) to enter as authorized by Lessee(s),and removing health or safety hazards. The premises may be entered to allow entry by a law enforcement officer with a search or arrest warrant or in hot pursuit. Lessee's unreasonable delay or failure to permit access to the premises shall be deemed a breach of the lease resulting in immediate dissolution, termination of the right of occupancy, · eviction and forfeiture of the security deposit.

**24) Appropriate Attire:** Wearing pants, trousers, shirts or shorts such that the known undergarments are displayed/exposed to the public, and/or public nudity including displaying the flesh of one's rear-end, behind, backside or frontside is prohibited except inside the rented apartment. Prohibited areas include, but are not limited to, the patio/balcony, common areas, hallways, parking lot and swimming pool, regardless of age. In addition, anyone entering the rental office should be appropriately attired, including shoes. Lessee is responsible for actions of Lessee, his family, guests, agents or Authorized Occupant(s).

**25) Occupancy:** Occupancy guidelines are strictly enforced. No more than 2 persons per bedroom.

**26) Lessor reserves the right to rescind any of these rules and to add such further reasonable rules and regulations as, in Lessors judgment, may be needed from time to time.

_____     _____
Lessee                                                    Lessee

Authorized Occupant                          Authorized Occupant

4|13|18                    854-23
Date                          Apt. No.            Agent for Lessor

APT - Community Policies  3/18                    4



## ADDENDUM TO LEASE REGARDING SECURITY

.   This addendum constitutes a part of the lease agreement (the "Lease") dated 04/13/18 made between **DORY TURNIPSEED** ("Lessee") and "Lessor" for the lease of apartment 854-23 (the "Apartment") in Sunlake Apts (the "Community").

I hereby state that I have inspected the apartment and have determined to my satisfaction that the smoke detector(s), door and window lock(s), and other devices in my apartment are adequate and in proper working order. I understand that it is my responsibility to notify management in writing if any repairs are needed to any device.

**1.** *Acknowledgement.* **LESSEE HEREBY ACKNOWLEDGES THAT HE/SHE/IT HAS BEEN ADVISED, PRIOR TO SIGNING THE LEASE, THAT NEITHER THE LESSOR, THE MANAGER OF THE COMMUNITY NOR THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES SHALL PROVIDE SECURITY SERVICES TO THE LESSEE PURSUANT TO THE LEASE. INSTEAD, THE RESPONSIBILITY FOR PROTECTION OF LESSEE, LESSEE'S GUESTS AND THE PROPERTY OF LESSEE AND LESSEE'S GUESTS FROM CRIMINAL ACTIVITY IS EXCLUSIVELY THE RESPONSIBILITY OF THE LESSEE.**

**2.** *Security Measures Taken by Lessor.* Lessor or the Community management may from time to time employ security patrols, provide security devices such as burglar alarms, install perimeter fences, control access to the Community or take other security measures. Any such actions by or on behalf of Lessor shall not be interpreted by Lessee as the provision of security services to Lessee or as a guarantee of Lessee's safety. Nor shall Lessee rely upon any actions taken or equipment installed by or on behalf of Lessor to provide adequate security for Lessee's person,. ' guests, property or guests' property from criminal activity. Moreover, Lessee has been specifically advised that any actions taken or equipment installed by or on behalf of Lessor may be ineffective to deter or prevent criminal activity on the premises for any number of reasons, including but not limited to mechanical failure, employee absenteeism, employee error, weather, and the skill of criminals. Additionally, Lessee understands that Lessor reserves the right to cease any activity or to remove any equipment which might have the effect of enhancing security on the premises without prior notice to or approval from any person, including Lessee. Thus, Lessee shall not rely upon any such actions or equipment for protection from criminal activity.

**3.** *Release.* Lessee acknowledges that neither Lessor nor the management of the premises has in any manner guaranteed or assured his, her, its safety from criminal activity on the premises and that Lessor has not accepted responsibility for protection of Lessee from such criminal activity.

**LESSEE THEREFORE AGREES THAT NEITHER LESSOR, THE MANAGEMENT OF THE COMMUNITY NOR THEIR EMPLOYEES SHALL BE LIABLE TO LESSEE, OCCUPANTS, GUESTS OR THEIR HEIRS, LEGATEES OR BENEFICIARIES FOR ANY INJURY, DEATH, PROPERTY DAMAGE OR OTHER LOSS SUSTAINED BY LESSEE AS A RESULT OF CRIMINAL ACTIVITY ON THE COMMUNITY PREMISES, WITHOUT REGARD TO ANY FAULT OF LESSOR. LESSEE UNDERSTANDS THAT BY SIGNING THIS INSTRUMENT, HE, SHE, IT IS RELEASING, WAIVING AND SURRENDERING · THE RIGHT TO ASSERT ANY CLAIMS AGAINST LESSOR OR THE MANAGEMENT OF THE APARTMENT WHICH THEY MIGHT OTHERWISE HAVE BEEN ABLE TO ASSERT IN THE EVENT OF INJURY, DEATH, OR LOSS ARISING FROM · CRIMINAL ACTIVITY ON THE APARTMENT PREMISES.**

4. *Indemnity*. LESSEE AGRE. TO INDEMNIFY AND HOLD HARMLESS .SSOR, THE MANAGEMENT OF THE COMMUNITY AND THEIR EMPLOYEES FOR ANY INJURIES, FATALITIES, PROPERTY DAMAGE OR OTHER LOSSES WHICH LESSEE, LESSEE'S FAMILY, GUESTS, AGENTS, OR AUTHORIZED OCCUPANT(S) MAY SUSTAIN AS A RESULT OF CRIMINAL ACTIVITY ON THE COMMUNITY PREMISES. THIS INDEMNITY SHALL EXTEND TO ALL EXPENSES, LIABILITY, ATTORNEYS' FEES, COURT COSTS, COSTS OF DEFENSE AND ANY OTHER LOSS OR EXPENSE INCURRED BY LESSOR AS A RESULT OF ANY CLAIM MADE FOR INJURIES, FATALITIES, PROPERTY DAMAGE OR OTHER LOSSES WHICH LESSEE, LESSEE'S FAMILY, GUESTS, AGENTS, OR AUTHORIZED OCCUPANT(S) MAY SUSTAIN AS A RESULT OF CRIMINAL ACTIVITY ON THE COMMUNITY PREMISES WITHOUT REGARD TO WHETHER SAID INJURIES, FATALITIES, PROPERTY DAMAGE OR OTHER LOSSES OCCUR AS A RESULT OF THE SOLE OR CONCURRENT NEGLIGENCE OF LESSOR, THE COMMUNITY MANAGEMENT OR THEIR EMPLOYEES. LESSEE FURTHER AGREES TO SO INDEMNIFY LESSOR, THE COMMUNITY MANAGEMENT AND THEIR EMPLOYEES WITHOUT REGARD TO WHETHER THE CRIMINAL ACTIVITY CAUSING INJURY, FATALITY, PROPERTY DAMAGE OR LOSS WAS FORESEEABLE TO ANY PERSON OR ENTITY.

5. *Representations.* Lessee acknowledges that neither Lessor, the Community management, their respective employees, or agents have made any representations regarding the extent of any criminal activity which has occurred at the Community or in the surrounding areas. It is the Lessee's responsibility to ascertain the relative safety of the premises, the Community, and surrounding areas. Lessee acknowledges that he/she/it has not been told by any representative of Lessor that this apartment community would be a safe place to live or that any security would be provided. Lessee acknowledges having been instructed to contact the local sheriff's offices for a copy of their most recent crime statistics for this area. (Jefferson Parish Sheriff's Office - 363-5500; Kenner Police Department - 712-2222; New Orleans Police Department - 821-2222).

6. *Definition of "Lessee".* This agreement refers to "Lessee" as defined in the "Apartment Lease".

7. *Term and Survival of the Terms of This Addendum.* The terms of this addendum shall survive the term of the "Apartment Lease" and shall remain in full force and effect at all times that Lessee occupies the premises whether said occupancy is month-to-month, tenancy at sufferance, holdover or otherwise. Moreover, in the event that Lessee executes any subsequent lease or lease renewal agreement for the premises, this addendum shall automatically be incorporated into that lease or lease renewal as though recited therein whether or not it is in fact expressly referenced or incorporated therein.

8. *Amendment.* The terms of this Addendum cannot be amended, waived, restricted, or in any way altered except by written agreement signed by both Lessee and Lessor.

9. *Severability.* In the event that any clause or provision of this addendum is found to be invalid or unenforceable for any reason, the remaining clauses and provisions shall remain in full force and effect.

Note to Lessee: This addendum is a legally binding document which substantially limits your right to seek damages from Lessor if you or your property is injured or damaged as a result of criminal activity on the premises. You should seek legal counsel to explain to you the legal significance and effect of this agreement if you have any doubt whether you fully understand it and its effect.

The undersigned hereby acknowledges that he/she/it has read the above addendum, has had the opportunity to consult legal counsel about it and understand it. By signing below, Lessee acknowledges receipt of the warnings contained in this addendum and is agreeing to the terms stated herein. He/she/it has not relied upon any statement or representations made by the leasing consultant(s) or any other employee of the management or the Lessor in making the decision to sign this document.

_____
Lessee

_____
Authorized Occupant

4|13|18                         854-23

Date                            Apt. No.

Authorized Occupant

_____
Agent for Lessor

**Tonti** MANAGEMENT

## ANIMAL DISCLOSURE AND ANIMAL LEASE ADDENDUM

1) **I (We),** _Kodteal_ **do not have an animal.** I (We) understand an animal is permitted at Lessor's sole discretion and **only after** mutual written agreement between Lessor and Lessee. If I (we) wish to have an animal on the premises at any time, I (we) must first obtain written permission from Lessor. I (We) agree to sign the Animal Lease and pay the applicable non-refundable animal fee of $ 300.00 and an additional security deposit of $450.00. I (We) understand the animal fee does not cover damages. If I (we) have moved into an apartment that has new carpet, I (we) agree to pay the animal fee and an additional security deposit of $900.00. If I (we) house an animal and fail to obtain prior written permission, I (we) agree to pay a sum equal to two (2) times the applicable non-refundable animal fee and an additional security deposit of $450.00 upon demand by Lessor.

2) **I, (We)** **have the animal identified below.** I (We) have paid the non-refundable animal fee of $ and an additional security deposit of $ . I (We) understand the animal fee does not cover damages. I (We) understand an animal is permitted at Lessor's sole discretion and **only after** mutual written agreement between Lessor and Lessee. If I decide to have another animal on the premises at any time, I (we) agree to obtain prior written permission, to sign another Animal Lease, and pay any applicable non-refundable animal fee and/or additional security deposit. If I (we) fail to obtain prior written permission, I (we) agree to pay a sum equal to two (2) times the applicable non-refundable animal fee and an additional security deposit upon demand by Lessor.

Lessor hereby issues an Animal Lease to <u>DORY</u> <u>TURNIPSEED</u>, Apartment <u>854-23</u>, at <u>854 JOE YENNI BLVD. APT. 23</u> in KENNER, Louisiana, for the term commencing on <u>04/13/18</u> and is subject to the following terms and conditions:

1. Lessee understands and agrees Lessor permits only <u>one</u> animal per apartment, and that only the animal described and named below, which has been subjected to a visual inspection and approval by Lessor, will occupy the premises. No additional or different animal is authorized under this agreement. Cats must be neutered and de-clawed or incur an additional deposit. No "visiting" animals allowed. Lessor only accepts dogs and cats and fish tanks up to 10 gallons for fish only. Dogs and cats shall not exceed 25 lbs. at maturity.

2. Lessee agrees that the animal will be kept inside apartment at all times except when on a leash and accompanied by, and under the control of, Lessee. If Lessee's animal is found loose on the premises or unattended on a balcony or patio, the Animal Lease will be cancelled and Lessee will have five (5) days to remove said animal from the premises with no refund.

3. Absolutely no animals are allowed in or around the pool area or on balconies. No animal food or water is allowed to be placed outside of apartment or fenced patio, or in any common areas. Lessee hereby agrees to clean up after the animal in the apartment and when walking anywhere on the premises. ($35 fine per violation.)

## MUST ALSO SIGN NEXT PAGE

( Exhibit 1 )

4.  Lessee agrees that if the animal becomes annoying, bothersome, or in any way a nuisance to other residents, or to the Lessor, Lessee will immediately, upon notice from Lessor, remove the animal from the premises with no refund.

5.  Lessee hereby agrees that the animal weighs no more than 25 lbs. at maturity. Lessee understands and agrees that if they acquire an animal for any reason whatsoever at any time _after_ move in, they agree to only acquire an animal under the 25 lb. weight limit and consistent with animals Lessor accepts. Lessor is under no obligation to make weight exceptions for animals acquired after move in except for verified service animals. In such instances, if the animal exceeds 25 lbs., Lessee shall be in violation of lease and shall remove animal with no refund.

6.  Lessee hereby authorizes Lessor to board animal at Lessee's sole expense in cases where animal is left unattended for a period of 24 hours.

7.  Lessor is not responsible for flea problems in the apartment where Lessee has an animal.

8.  Lessor reserves the right at all times to revoke the privilege of having an animal in any apartment on the premises. With the exception of a verified service animal, should Lessee acquire or disclose any animal for any reason after move in, Lessee agrees that the animal will not exceed 25 lbs. at maturity, and will remove any previously approved non-assistive animal.

9.  Lessee understands and agrees that should Lessee's animal damage any flooring, Lessee will be responsible _for full replacement cost, without benefit of depreciation_, for any flooring requiring replacement due to Lessee's actions, responsibilities or negligence and payment is due immediately on demand regardless of any deposit on file.

I verify my animal is up to date on all vaccines and free of transmittable disease and affirm the animal is in compliance with all state and local laws. I permit my landlord to verify/check at any time.

Breed _____  Name_____  Color_____

Age _____  Weight _____ lbs.  Vet Name/Phone No._____

_____          _____
Lessee                                                       Lessee

Authorized Occupant                                   Authorized Occupant

4/13/18               854-23
Date                            Apt. No.              Agent for Lessor

**Picture of Animal taken by Rental Office to be Attached**

APT - Animal Disclosure & Animal Lease Addendum  3/18          2

**MUST SIGN THIS PAGE**

EQUAL HOUSING OPPORTUNITY



Fort Worth Regional Office of Fair Housing and Equal
Opportunity, Region VI
801 Cherry St., Unit 45, Suite 2500
Fort Worth, TX 76102
Phone 1-888-560-8913 Fax 817-978-5876
www.hud.gov

June 19, 2018

Five Properties, LLC (Owner)
4433 Conlin St.
Kenner, LA 70006

Dear Respondent:

Subject: Housing Discrimination Complaint
Dory Turnipseed v Five Properties LLC, et al.
Inquiry No. 555777
HUD Case No. 06-18-2185-8

We have received a formal complaint alleging that you have engaged in one or more discriminatory housing practices under the Federal Fair Housing Law, 42 U.S.C. Sections 3601-3619. We are required by statute to send you a copy of the complaint.

We are enclosing a copy of the complaint for you. The alleged discriminatory practices are identified in this complaint. We have made no determination as to whether the complaint against you has merit.

The purpose of this letter is to inform you of: 1) the rights you have in responding to this complaint, 2) the rights each complainant has, and 3) the steps the U.S. Department of Housing and Urban Development (the Department) will take to determine whether the complaint has merit.

In order to insure that the Department informs you properly of the law's requirements, this notification letter contains language required by the law. A similar letter is used to notify all parties whenever a formal complaint has been filed with the Department under the Federal Fair Housing Law.

We are governed by federal law, which sets out what steps we must take when a formal complaint is filed. The law also includes steps that you can take to answer or refute the allegations of this complaint.

Under federal law, any answer from you to this complaint can be filed within 10 calendar days of your receipt of this letter or receipt of a letter notifying you of any amendments to this complaint. Your answer must be signed and you must affirm that you have given a truthful response by including the statement "I declare under penalty of perjury that the foregoing is true and correct."

| EXHIBIT |
| :---: |
| **2D** |

Acceptance Letter                                                HUD Case No. 06-18-2185-8

You will be allowed to amend your statement at any time. if our investigation shows that it is reasonable and fair for you to do so.

Our responsibility under the law is to undertake an impartial investigation and, at the same time, encourage all sides to reach an agreement, where appropriate, through conciliation. The law requires us to complete our investigation within 100 days of the date of the official filing of the complaint. If we are unable to meet the 100-day requirement for issuing a determination, the law requires that we notify you and the complainant(s) and explain the reasons why the investigation of the complaint is not completed.

In handling this complaint, we will conduct an impartial investigation of all claims that the Fair Housing Act has been violated. If the investigation indicates that there is not evidence establishing jurisdiction, the case will be dismissed. At any point, you can request that our staff assist you in conciliating (or settling) this complaint with the complainant(s). If the case is not resolved, we will complete our investigation and decide whether or not the evidence indicates that there has been a fair housing violation. If the parties involved have not reached an agreement to settle the complaint, the Department will issue a determination as to whether there is reasonable cause to believe a discriminatory housing practice has occurred.

If our investigation indicates that there is reasonable cause to believe that an unlawful discriminatory housing practice has occurred, the Department must issue a charge. If the investigation indicates that there is no reasonable cause to believe that discrimination has occurred, the complaint will be dismissed. In either event, you will be notified in writing.

If the determination is one of reasonable cause, the notification will advise you and the complainant(s) of your rights to choose, within 20 days, whether you wish to have the case heard by an Administrative Law Judge, or to have the matter referred for trial in the appropriate U.S. District Court.

Each complainant has the legal right to file such a suit, even if the complaint formed the basis for a charge, as long as an Administrative Law Judge has not started a hearing on the record with respect to the charge. Under federal law, even if the Department dismisses the complaint, each complainant still has the right to file an individual lawsuit under the Fair Housing Law in an appropriate federal, state or local court within two years of the date of the alleged discriminatory practice or of the date when a conciliation agreement has been violated. The law does not count, as part of the two-year period, any of the time when a proceeding is pending with the Department.

There may be other applicable federal, state or local statutes under which you and/or the complainant(s) may initiate court action. You may consult a private attorney in this regard.

The law also requires us to notify you that section 818 of the Fair Housing Act makes it unlawful for you, or anyone acting on your behalf, to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, any right granted or protected under the Federal Fair Housing Law. The law also makes it illegal for anyone to coerce, threaten or interfere with any person for having aided or encouraged any other person in the exercise or enjoyment of, any right or protection granted to them under the Federal Fair Housing Law.

Some explanatory material on the law is enclosed for your information.

If you have any questions regarding this case, please contact our office at 1-888-560-8913. Please refer to the case number at the top of this letter in those contacts, and keep this office advised of any change of your address or telephone number. We hope this information has been helpful to you.

Sincerely,

Garry L. Sweeney, Director
Office of Fair Housing & Equal Opportunity
Region VI

Enclosures

June 15, 2018
**Housing Discrimination Complaint**

**Case Number:**     555777

1.      **Complainants:**

Dory Turnipseed
0      845 Joe Yenni Blvd, Apt 23
Kenner, LA 70065

2.      **Complainant Representatives:**

3.      **Other Aggrieved Parties:**

4.      **The following is alleged to have occurred or is about to occur:**

- Discriminatory terms, conditions, privileges, or services and facilities
- Discriminatory acts under Section 818 (coercion, Etc.)
- Discriminatory refusal to rent
- Failure to make reasonable accommodation

5.      **The alleged violation occurred because of:**

- Handicap

6.      **Address and location of the property in question (or if no property is involved, the city and state where the discrimination occurred):**

Sunlake Apartments
845 Joe Yenni Blvd.
Kenner, LA, LA 70065

7.      **Respondents:**

APMT LLC d/b/a Tonti Management
4433 Conlin St.
Kenner, LA 70006

Kim LNU (Agent: Sunlake)
800 Joe Yenni Blvd., Ofc.
Kenner, LA 70065

Sherry LNU (Agent: Tonti)
4433 Conlin St.
Kenner, LA 70006

Five Properties, LLC (Owner)
4433 Conlin St.
Kenner, LA 70006

8.      **The following is a brief and concise statement of the facts regarding the alleged violation:**

<div style="border:1px solid">

**EXHIBIT**

**2E**

</div>

Complainant, Dory Turnipseed, is a person with a disability. Complainant resides at Sunlake Apartments, in Kenner, Louisiana. Sunlake is owned by Five Properties LLC, and is managed by APMT, LLC (d/b/a Tonti Management). Sherry LNU is an agent acting on behalf of APMT, LLC. Kim LNU, is the onsite manager. Collectively, they are the respondents in this matter.

Around April 13, 2018, the complainant moved into Sunlake Apartments. The complainant stated that around May 9, 2018 she provided the management team medical documentation supporting the need for an emotional support animal (ESA), a dog. After a few days, the complainant had not received any notice regarding her request to bring the ESA on the property, but her condition was worsening. Therefore, she decided to bring the ESA to her unit. Shortly thereafter, the complainant was informed by management that she needed to remove the dog and pay $1050 or be evicted. The complainant did not have the money and around May 23, 2018, was once again threatened with eviction if she failed to pay the fine. On June 15, 2018, the complainant received a summons to appear in court for eviction proceedings.

Based on the forgoing the complainants believe they have been subjected to different terms and conditions, denied a reasonable accommodation, have refused to rent to her, and have intimidated and retaliated against her for exercising her fair housing rights.

9. **The most recent date on which the alleged discrimination occurred:**

   June 15, 2018 , and is continuing.

10. **Types of Federal Funding Identified:**

11. **The acts alleged in this complaint, if proven, may constitute a violation of the following sections:**

   804b or f, 818, 804a or f, and 804f3B of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

**Please sign and date this form:**
**I declare under penalty of perjury that I have read this complaint (including any attachments) and that it is true and correct.**

_Dory Turnipseed_                 06/14/2018

Dory Turnipseed                 Date

**N O T E : HUD WILL FURNISH A COPY OF THIS COMPLAINT TO THE PERSON OR ORGANIZATION AGAINST WHOM IT IS FILED.**



# Alker & Rather, LLC

**James C. Rather, Jr.**
jrather@alker-rather.com

July 12, 2018

**VIA U.S. MAIL & FAX:  (817)-978-5876**
Mr. Garry L. Sweeny. Director
Department of Housing & Urban Development
Office of Fair Housing & Equal Opportunity, Region VI
801 Cherry Street, Unit 45, Suite 2500
Fort Worth, Texas 76102

> Re:     **Dory Turnipseed v. Five Properties, LLC et al**
>         **Inquiry No.  555777**
>         **HUD Case No.:  06-18-2185-8**

Dear Mr. Sweeny:

I represent Five Properties, LLC, APMT, L.L.C., Kim Mamerto (incorrectly referred to as Kim LKU) and Sherri Roane (Incorrectly referred to as Sherry LKU) with respect to the above-captioned matter. This correspondence is in response to the Housing Discrimination Complaint submitted by Dory Turnipseed on June 14, 2018.

My clients vehemently deny the allegations set forth Ms. Turnipseed's Complaint.  At all relevant times, my clients complied with the Fair Housing Act, 42 U.S.C. 3601, *et seq.* and Louisiana Equal Housing Opportunity Act, La. R.S. 51:2601, *et seq.*  Moreover, my clients object to the Complaint and the instant investigation on the basis of lack of subject matter jurisdiction, prematurity, improper service of process, improper venue, *lis pendens*, and *res judicata.*

As you may know, Ms. Turnipseed filed a federal lawsuit against APMT, LLC asserting the exact same factual allegations and legal causes of action as set forth in the subject Housing Discrimination Complaint. See, *Dory Turnipseed v. APMT, LLC d/b/a Tonti Management, 2:18-cv-05187, U.S.D.C. E.D. La.*  My clients incorporate by reference herein all factual allegations and defenses asserted in the Federal Court proceeding.

If you have any questions or wish to discuss this matter, please feel free to give me a call.

Sincerely,

James C. Rather, Jr.

**EXHIBIT
2F**



U.S. Department of Housing and Urban Development
Fort Worth Regional Office, Region VI
Office of Fair Housing & Equal Opportunity
307 W. 7th Street, Suite 1000
Fort Worth, TX 76102
Phone: 1-888-560-8913 Fax: 817 978-5876

October 31, 2023

APMT LLC d/b/a Tonti Management (Property Management)
4433 Conlin St.
Metairie, LA 70006

Dear Respondent:

Subject:     Housing Discrimination Complaint
          Dory Turnipseed v Five Properties LLC, et al.
          Inquiry No. 555777
          Fair Housing Act Case No. 06-18-2185-8

This is to advise you that the investigation of the above-referenced complaint was not completed within 100 days from the filing of the complaint. Completion within 100 days was impracticable because there was a need to conduct further legal analysis of information gathered during the investigation and to finish writing a report of the investigation.

At this time, the projected date for completion of the investigation of this case is **November 30, 2023**. This date, however, is subject to change because we cannot always predict what additional information or further action may be necessary to ensure that a comprehensive and impartial investigation has been conducted. If you have not heard from the investigator in this case regarding completion of the investigation by this date, feel free to call the investigator for an update on the investigation.

If there is a need for additional information from you directly, you will be contacted. We would appreciate your continuing cooperation should there be a need for additional investigation or conciliation.

If you have any questions regarding this case or wish additional information about the reasons why completion of the investigation within the next 30 days is impracticable, please contact the investigator assigned to this case for assistance.

We can respond more expeditiously to your concerns if you have your complaint number whenever you contact us.



Hundred Day Letter

HUD Case No. 06-18-2185-8

EXHIBIT
2G

Sincerely,

Christina Lewis, Director
Fort Worth Regional Office of
Fair Housing and Equal Opportunity
Region VI